## CITY OF JEFFERSONVILLE ET AL. *v.* LOUISVILLE & JEFFERSONVILLE BRIDGE COMPANY.

[No. 20,074.  Filed January 15, 1908.]

1. INJUNCTION.—*Taxation.*—*Tender.*—The plaintiff in a suit to enjoin the collection of taxes alleged to be excessive must make an unconditional tender of the amount which is conceded to be equitably due. p. 656.

2. APPEAL.—*Injunction.*—*Taxation.*—*Conditional Tender.*—A decree for plaintiff, in a suit to enjoin the collection of taxes alleged to be excessive, will be reversed, where the plaintiff made only a conditional tender of the amount of taxes conceded to be equitably due. p. 656.

3. SAME.—*Questions Decided.*—*Public Interest.*—The Supreme Court, where questions of public interest are involved, may de-

City of Jeffersonville *v.* Louisville, etc., Bridge Co.—169 Ind. 645.

cide such questions, though the case must be reversed on another point. p. 656.

4. TAXATION.—*Railroad Bridges.—Corporations.*—A bridge corporation owning a railroad bridge spanning the Ohio river and having terminal facilities and rolling stock is assessable by the State Board of Tax Commissioners under §10236 *et seq.* Burns 1908, Acts 1891, p. 199, Acts 1901, p. 44, and Acts 1903, p. 49, as a corporation owning a "railroad"; and not by the township assessor under §10167 Burns 1908, Acts 1891, p. 199, §18, as a "bridge company." p. 656.

5. EVIDENCE.—*Judicial Notice.—Reports of State Board of Tax Commissioners.*—Courts take judicial notice of the reports of the State Board of Tax Commissioners. p. 658.

6. STATUTES.—*Construction.—Departmental Usage.*—In case of doubt, the departmental construction of a statute is very influential with the courts. p. 658.

7. TAXATION.—*State Board.—Valuation.—Rehearing.*—Under §8547 Burns 1901, Acts 1895, p. 74, §5, a property owner whose property had been valued by the State Board of Tax Commissioners, under reasonable conditions prescribed· by such board, had the right to a rehearing and the introduction of .evidence thereon; and the order then made, whether a confirmation of the prior valuation, or a new valuation, controlled. p. 659.

8. SAME.—*State Board of Tax Commissioners.—Evidence.—Appeal.*—Where the State Board of Tax Commissioners, after considering all of the evidence and applying its expert knowledge of the subject, fixes an appraisement for taxation, its decision will not be disturbed on appeal. p. 659.

9. SAME.—*Assessment.—Setting Aside.—Injunction.*—Where fraud is not alleged in the making of a valuation for taxation, the valuation cannot be collaterally attacked, in an injunction suit, unless it is affirmatively shown that a wrong principle was adopted in the making of such valuation, or that the tax board included therein property without its jurisdiction. *Hart* v. *Smith*, 159 Ind. 182, distinguished. p. 660.

10. SAME.—*Interstate Corporations.—Railroad Bridges.*—A corporation owning an interstate railroad bridge, with terminals in both states, together with rolling stock, is liable to assessment for taxation in this State for the value of its property in this State, determined by its equitable proportion of the value of the whole property as a unit. p. 660.

11. SAME.—*Valuation.—Presumptions.*—There is a strong presumption that the State Board of Tax Commissioners gave proper weight to the evidence before it in making a valuation for taxation. p. 662.

12. SAME. — *Valuation. — Cost. — Overvaluation. — Remedy.* —Evidence of the cost of property is not controlling in making a valu-

NOVEMBER TERM, 1907.     · 647

City of Jeffersonville *v.* Louisville, etc., Bridge Co.—169 Ind. 645.

ation for taxation; and the courts cannot relieve from an over-valuation, where legally made. p. 662.

From Clark Circuit Court; *Harry C. Montgomery*, Judge.

Suit by the Louisville & Jeffersonville Bridge Company against the city of Jeffersonville and others. From an interlocutory decree for plaintiff, defendants appeal. *Reversed.*

*James Bingham*, Attorney-General; *H. M. Dowling, E. M. White, A. G. Cavins, Wilmer T. Fox* and *Miller, Shirley & Miller*, for appellants.

*M. Z. Stannard* and *Alexander P. Humphrey*, for appellee.

GILLETT, J.—Appellee instituted this suit against appellants, to enjoin the collection of certain taxes based on an assessment made against said company by the State Board of Tax Commissioners. Appellants appeal from an order granting a temporary injunction.

We shall attempt to give only an abstract of such of the facts which the verified complaint discloses as appear pertinent in disposing of the case. In 1887 a corporation was organized in this State to construct and own a bridge and approaches thereto between the city of Louisville, Kentucky, and the city of Jeffersonville, Indiana. A corporation was also organized in Kentucky with authority to construct a bridge between said cities, and subsequently, by virtue of an act of the legislature of the latter state, the franchises, interests and properties of the two companies were consolidated under the corporate name of the Louisville & Jeffersonville Bridge Company, the appellee herein. After the consolidation appellee became the owner of an iron or steel bridge located across the Ohio river at the point aforesaid, forty-eight-hundredths of a mile in length, of which forty-four-hundredths of a mile is in Kentucky and four-hundredths of a mile is in Indiana. The approaches to said bridge consist of iron or steel viaducts; the approach from

the Kentucky side being fifty-two-hundredths of a mile in length, while that in Indiana is ninety-four-hundredths of a mile long. Said company acquired certain real estate and personal property in Indiana, and it also obtained real estate and personal property in Kentucky, together with a system of railroad tracks located north and south of the Ohio river, and over and across said bridge and approaches. The complaint then alleges the manner in which said bridge and approaches are constructed, and the manner of acquiring what is referred to as "certain large and valuable Louisville terminals." The substance of this arrangement was that the Cleveland, Cincinnati, Chicago & St. Louis Railway Company and the Chesapeake & Ohio Railway Company, having become the owners of all of the stock of appellee, guaranteed an issue of bonds to the amount of $3,500,000, bearing four per cent interest, which bonds sold for $3,205,389, and the proceeds were used in the purchase and construction of said property. The amount thereof, which was expended in Indiana, was $455,983, and the balance was expended in Kentucky. The Indiana expenditure was on account of the acquisition of real estate and the building of that part of the bridge, approach and terminals in said State. Of the Kentucky expenditure $1,549,298 was on account of the acquisition of the Kentucky terminals, which are described as consisting of valuable real estate, a freight-house, yards, tracks, roundhouse, bulking yards, and other properties for the use of said railway companies. Prior to the negotiations of said bonds plaintiff executed a lease to said railway companies, whereby they acquired the right to use said bridge, approaches and terminals in the operation of their trains, and in consideration thereof said companies assumed the obligation of paying the operating expenses of said bridge and of keeping the same in repair, and afterwards, in the year 1905, the plaintiff executed a lease to the Louisville & Southern Indiana Traction Company, whereby the latter was given the right to operate its street-cars over said bridge, upon the

NOVEMBER TERM, 1907.    649

City of Jeffersonville v. Louisville, etc., Bridge Co.—169 Ind. 645.

agreement to pay one and one-quarter cents for each passenger carried over said bridge, which lease has yielded an annual revenue of from $12,000 to $14,000. The gross earnings of plaintiff have at all times been insufficient to pay its operating expenses and fixed charges, and on March 1, 1906 (the time to which the assessment relates), its capital stock was worthless. At said time, and for a year preceding said date, the true cash value of all of plaintiff's property which was located in Indiana, or assessable therein, including the bridge, approach, railroad tracks, rolling stock, station holdings, real estate and personal property, was $218,941, and no more, and said property had never been assessed for any greater sum. The complaint then makes the following allegations, which we deem it necessary to quote: ''Plaintiff states that on March 1, 1906, and for several years prior thereto, the plaintiff owned, in the city of Louisville, a very large amount of real estate of very great value, upon part of which it had erected a large freight station, which was used by said two railroad companies, and upon other parts of which it had built team tracks, and upon other parts of which it had built a roundhouse and tracks connecting its tracks with industries and with other railroads entering the city of Louisville, and a large amount of real estate of great value which it had purchased for the purpose of extending the before mentioned and similar facilities; that said real estate and improvements were independent of its said bridge and the approaches thereto and of the use thereof, one of said railroads, the Chesapeake & Ohio, not using said bridge or approaches at all, and the other using said before-described property independent of its use of said bridge and approaches. Plaintiff states that there was no community of use between such property and the plaintiff's bridge and approaches or the part of plaintiff's property which was in the State of Indiana, but it was entirely independent in the use thereof.'' It is further alleged in said complaint that during each year prior to 1906 plaintiff made return of its

650    SUPREME COURT OF INDIANA,

City of Jeffersonville *v.* Louisville, etc., Bridge Co.—169 Ind. 645.

property to the proper authorities of the State of Indiana, and also to the local authorities. In 1906 plaintiff, pursuant to the demand of the Auditor of State, made a list of its Indiana property to said officer, and he laid said statement before the State Board of Tax Commissioners. Said board grouped said four-hundredths of a mile of bridge and said ninety-four-hundredths of a mile of approach, and twenty-three-hundredths of a mile of railroad track under the head of one and twenty-one-hundredths miles of main track, and valued and assessed the same at $700,000 per mile. Said board grouped all of the residue of said tracks under the head of four and eight-hundredths miles of side-track, and valued and assessed the same at $3,500 per mile. Said board grouped plaintiff's locomotives under the head of one and twenty-one-hundredths miles of rolling stock, and valued and assessed the same at $6,000 per mile. Said board grouped plaintiff's station building and appurtenances as improvements on right of way, and valued and assessed the same at $750. The aggregate assessment was an increase of more than $600,000 in the assessment of said property over former years. It is then charged that in making the assessment of 1906 the board proceeded on an erroneous principle and theory of taxation, and in violation of the Constitution of the United States, in this: "That said State Board of Tax Commissioners, in making said pretended assessment, took into consideration the ownership by the plaintiff of the before-described real estate and terminals in Louisville, and made said assessment upon the assumption that all of the property belonging to the plaintiff—that in Kentucky and that in Indiana, its bridge and its approaches and all of said terminal property—was to be considered as a unit, with the value imparted to such unit by the plaintiff's ownership of said real estate and terminals before described, and in consideration thereof valued and assessed the plaintiff's property, so denominated in said assessment as one and twenty-one-hundredths miles of main track and four and eight-hun-

dredths miles of side-track, as hereinbefore alleged, at the value as hereinbefore stated, and in this way included in and imparted to the value of property assessed in Indiana property and its value which was entirely outside of the limits of said State. And plaintiff says that notwithstanding the fact that it called the attention of said board, in the time and manner provided by statute, to these facts, and to the erroneous principle adopted by it, said board refused to correct said assessment.'' It is also alleged that the amount justly owing by plaintiff for the first instalment of taxes does not exceed $3,500, and plaintiff tendered the treasurer of said city $3,563.50 in gold coin of the United States, in full of said first assessment, which tender was refused, and the amount brought into court.

Upon the hearing appellee introduced in evidence, in addition to the verified complaint, the affidavit of an officer of said company. The portions of said affidavit which it is material to set out are as follows: ''Affiant states that the city of Louisville had a population at the census of 1900 of 205,000. The properties of the Louisville & Jeffersonville Bridge Company are, and have been since affiant's connection therewith, used by two railroads, to wit, the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, and the Chesapeake & Ohio Railway Company. The traffic of the first company, which is familiarly known as the Big Four, comes into Louisville across the bridge. The traffic of the other company, commonly called the C. & O., comes into Louisville over the tracks of the Louisville & Nashville Railroad Company, between Louisville and Lexington, and does not pass over the bridge at all, but, as will be noted from the maps herein referred to, connects with the terminals of the Louisville & Jeffersonville Bridge Company at their west end, which is far remote from the connection of the bridge approach with the aforesaid terminals at their east end. Both the Big Four and the C. & O. use a freight-house, which is in Louisville, on the north side of Main street between

Preston and Jackson, running back to Washington street, and the team tracks and bulk yards on the north side of Main street between Jackson and Hancock, running back to Washington street, and the various switching yards which are set forth upon the second map filed with this affidavit. These properties, that is, the real estate and the buildings, are used entirely independent of the bridge and approaches. The other property has been acquired by the bridge company with a view to building additional freight-houses and connecting tracks with other railroads entering the city of Louisville, all of which property, affiant says, has a very large value, entirely independent of said bridge and approaches, and is capable of being used, and is, in fact, largely used, entirely disconnected from said bridge and approaches. Affiant states that to these uses that part of the bridge and approaches of the Louisville & Jeffersonville Bridge Company which is in Indiana contributes no value. Affiant states that as a representative of the Louisville & Jeffersonville Bridge Company he appeared before the State Board of Tax Commissioners of the State of Indiana at the second session in the year 1906, together with counsel for said company. Affiant states that it was pointed out to said State Board of Tax Commissioners that the property of the Louisville & Jeffersonville Bridge Company in Louisville was of the character which affiant has before described, and could in no sense be considered as composing a unity of use with the property of the Louisville & Jeffersonville Bridge Company in Indiana, and the use of said property and its value independent of any use of the bridge and approaches was so pointed out to said board. Also, the use that the Chesapeake & Ohio Railway Company made thereof, without any use of said bridge and aproaches, was pointed out to said State Board of Tax Commissioners. Affiant says that said State Board of Tax Commissioners, in fixing the value of the property of the Louisville & Jeffersonville Bridge Company in Indiana, erroneously took into consideration what was as-

NOVEMBER TERM, 1907. 653

City of Jeffersonville *v.* Louisville, etc., Bridge Co.—169 Ind. 645.

sumed by said board to be a unity in the use of said property with the valuable terminal property and real estate, buildings and tracks in Louisville, Kentucky, as before set forth in this affidavit. And affiant says that said board, in arriving at the amount at which it assessed said bridge and approach and tracks of the Louisville & Jeffersonville Bridge Company in said State of Indiana, based its conclusion upon the assumed unity of use of said property with the valuable property which affiant has described as being in Louisville, Kentucky, and in this way fixed a value upon said part of said bridge and approach and tracks in said State of Indiana far above the cost thereof or the true cash value thereof, or the value thereof as a part of a bridge and approaches. * * * Affiant states that the cost of the property of the Louisville & Jeffersonville Bridge Company in Indiana is set out in the amended complaint. Affiant states that said cost is largely in excess of the true cash value of said property when purchased, and in the year 1906 and now. Affiant further states that he has full knowledge of said property, and that its true cash value does not now, nor did it in 1906, exceed one-half of its cost price.'' The affidavit of the treasurer of the city of Jeffersonville shows that the money tendered was made in full of the first instalment, and that no part thereof was tendered without the condition of its being accepted in full payment. Three affidavits, made by members of said board of tax commissioners, were introduced by appellant. So far as here material, each of said affidavits is as follows: ''Affiant further says that in addition to the general knowledge and experience of the several members of said State Board of Tax Commissioners in assessing and determining the value of various classes of properties, including railroad and bridge properties, said board took into consideration, among other evidence, the verified statement of said plaintiff, filed with said board as aforesaid, a copy of which is hereto attached and made a part of this affidavit, the actual value of the bonds, issued to the extent of $3,500,-

654 SUPREME COURT OF INDIANA,

City of Jeffersonville *v.* Louisville, etc., Bridge Co.—169 Ind. 645.

000 against the properties of said plaintiff, the actual value of such of the properties of said plaintiff, both in Indiana and Kentucky, as were used in connection with said plaintiff's business as a bridge enterprise, and the actual value of such enterprise as an operating unit; that said board in making said assessment did not know and did not assume it to be a fact, neither did it take into consideration that the Kentucky terminals of said plaintiff on March 1, 1906, or at any time prior thereto, possessed any value as real estate, independent of their use in the operation of said bridge enterprise, and independent of their use to said plaintiff in the operation of its said bridge and approaches thereto, and independent of the unity of use existing between the Indiana and Kentucky properties of said plaintiff essential to the conduct of its said business, but, on the contrary, said board, in making its said valuation and assessment so far as said Kentucky terminals were concerned, took into consideration and included the value of said Kentucky terminals only so far as they possessed a value dependent upon and incidental to their use as a part of said plaintiff's business as a bridge enterprise operated as a unit. Affiant further says that after determining the value of all of the plaintiff's property used in connection with and as a part of its said bridge enterprise in Indiana and Kentucky, other than real estate in Indiana, side-tracks and improvements on right of way, to be $1,820,000, said board ascertained the total number of miles of main track owned by said plaintiff in both Indiana and Kentucky, and the number of miles of such main track in Indiana, and valued and assessed that portion of the plaintiff's property in Indiana denominated 'main track' in the proportion that the length of such main track in Indiana bore to the whole length of the plaintiff's main track, which resulted in an assessment of the Indiana 'main track' of plaintiff at $847,000; that in so doing said board did not know and did not assume it to be a fact, neither did it take into consideration that the Kentucky terminals of said plain-

tiff on March 1, 1906, or at any time prior thereto, possessed any value as real estate independent of their use in the operation of said bridge enterprise and independent of their use to plaintiff in the operation of its said bridge and approaches thereto and independent of the unity of use existing between the Indiana and Kentucky properties of the plaintiff essential to the conduct of its said business; but, on the contrary, said board, in making its said valuation of the main track of the plaintiff, so far as said Kentucky terminals were concerned, took into consideration and included the value of said Kentucky terminals only so far as they possessed a value dependent upon and incidental to their use as a part of said plaintiff's business as a bridge enterprise operated as a unit; that afterwards, to wit, on August 21, 1906, in proceeding in appeal before said board from said valuation and assessment, it was admitted by M. L. Akers, the secretary of said plaintiff, and appearing before said board at said time as such secretary under oath, that $3,500,000 four per cent bonds were then outstanding against the properties of said plaintiff; that the payment of these bonds and interest thereon was guaranteed by the Cleveland, Cincinnati, Chicago & St. Louis Railway·Company and by the Chesapeake & Ohio Railway Company; that the total properties of said plaintiff were actually worth at the time of said appeal $3,500,000; that neither on said appeal, nor at any other stage of the proceedings before said board, was any evidence presented that said Kentucky terminals had any value whatever, independent of their use in the operation of said bridge enterprise or independent of their connection with said bridge as an operating unit; nor was any objection to said assessment and valuation of the plaintiff's 'main track' made by said plaintiff at any time to said board upon the ground that said Kentucky terminals possessed a value as real estate independent of their use to the plaintiff in the operation of said bridge and approaches and independent of the unity of use existing between the Indiana and Kentucky properties es-

sential to the conduct of its business, or upon the ground that said board had included in said assessment the value imparted to said Kentucky terminals by such independent use; that said board considered all matters required to be considered by it under the statutes of the State of Indiana, in relation to the assessment and valuation of the plaintiff's properties, as well as all other matters which, in the judgment of said board, bore upon the question of actual value of the same; and from said considerations, and from all the facts and information had and obtained by said board, the assessment and valuation of said plaintiff's properties were fixed and determined, and plaintiff's appeal was ordered dismissed.''

It was the duty of appellee to make a tender of the amount of taxes which the complaint concedes to be equitably due, and this tender should have been unconditional, to the end that the treasurer might receive it without being placed in the attitude, when making his defense, of having assumed an inconsistent position. *Lynch* v. *Jennings* (1873), 43 Ind. 276; *State Railroad Tax Cases* (1875), 92 U. S. 575, 616, 23 L. Ed. 663; *Bundy* v. *Summerland* (1895), 142 Ind. 92. Public interests, as well as equitable considerations, require the tender of that portion of the taxes which, on the theory on which the bill proceeds, confessedly ought to be paid. And because of appellee's conditional tender the cause must be reversed. With this the appeal might be treated as disposed of, but in view of the public questions involved, which have been extensively argued by the parties, we are of opinion that we should pass upon the essential questions in the case, so far as the record may be said to present them.

The first of said questions is whether said State Board of Tax Commissioners was empowered to assess appellee. It is the contention of its counsel that it should be assessed by the local authorities as a bridge company, under §10167 Burns 1908, Acts 1891, p. 199, §18, which is as

follows: "The personal property of street railroad, plank road, gravel road, turnpike or bridge companies shall be listed and assessed in the township, city or town where the principal place of business is located. The track, road or bridge of such company shall be held to be personal property, and shall be listed and assessed in the township, town or city where the same is located or laid." On the other hand, appellant's counsel contend that appellee was subject to assessment by the State Board of Tax Commissioners as the owner of a railroad, under §10236 *et seq.* Burns 1908, Acts 1891, p. 199, Acts 1901, p. 44, and Acts 1903, p. 49.

It appears that the consolidated corporation, the Louisville & Jeffersonville Bridge Company, is not only the owner of a bridge and the approaches thereto, together with a railroad track across said bridge and approaches, but also that it is in fact the owner of a terminal railroad, having its own rolling stock, furnishing terminal facilities for two lines of railroad in the city of Louisville, and, in the nature of things, affording facilities for the interchange of traffic between said railroads. Section 10236, *supra,* requires "every person, company or corporation owning, managing, operating or constructing a railroad" to make return to the State Board of Tax Commissioners for the purposes of taxation. Considering appellee's enterprise as a whole, it was in fact the owner and operator of a railroad, and was therefore within the scope of the statute which requires every person, company and corporation owning or operating a railroad to make return of its property to the State Board of Tax Commissioners. No question of corporate power is involved in this proceeding. As this bridge company was in fact the owner of and operating a railroad, it was its duty so to return its property. Notwithstanding the character of appellee's corporate organization, its enterprise was such as to bring it fully within the term "railroad;" its bridge holding was but an adjunct of its railroad property. The proposition we

658    SUPREME COURT OF INDIANA,

City of Jeffersonville *v.* Louisville, etc., Bridge Co.—169 Ind. 645.

seek to enforce is illustrated by *Pittsburgh, etc., R. Co.* v. *Keokuk, etc., Bridge Co.* (1889), 131 U. S. 371, 389, 9 Sup. Ct. 770, 33 L. Ed. 157, wherein the United States Supreme Court, in discussing the question whether under certain statutes a contract by a railroad company to pay certain sums for the use of a railway bridge was *ultra vires* of the power of the corporation, said: "Nor can we doubt that the bridge company was a railroad company, and the bridge a railroad, within the meaning of these statutes. The principal purpose and use of the bridge was in the passage of railroad trains. It was, in substance and effect, a railroad built over water, instead of upon land; and strictly speaking, it was a railroad viaduct rather than a bridge." It was held in *Sault Ste. Marie Bridge Co.* v. *Powers* (1905), 138 Fed. 262, that a corporation organized under a statute providing for the incorporation of railroads, whose business was to complete and own a bridge used solely for railroad purposes, and which had always reported to the railroad commissioner and paid taxes as a railroad company, was properly taxable as such, within the provisions of an act for the taxation of railroad companies.

The complaint tacitly admits the practice of the State Board of Tax Commissioners of assessing appellees, and the reports of said body, of which we take judicial notice, as they are published by authority of law (*Kirby* v. *Lewis* [1889], 39 Fed. 66), show that the practice of assessing corporations of this character has existed for many years. In case of doubt, a long-continued departmental construction is very influential, but we should have no doubt as to the correctness of this construction if the question were without the influence of the practice referred to.

Counsel for appellee claim that §10167, *supra,* contains an apposite provision for the making of the assessment by the local authorities, and that therefore the provisions of said section should be regarded as controlling. That section may

possibly provide the method of assessment of interstate bridge companies which are not the owners of or operating railroads, but, to say the least, the provisions of said section are inapt as applied to an interstate bridge corporation, since it might have no principal place of business in the State to give a situs to its personal property. We hold that appellee was subject to assessment by the State Board of Tax Commissioners.

In taking up the question of the validity of the assessment as ultimately confirmed by the State Board of Tax Commissioners, we have to say that no fact appears which impeaches the assessment. By §8547 Burns 1901, Acts 1895, p. 74, §5, provision was made for a hearing of appeals and applications for revisions, at which time parties deeming themselves aggrieved by the prior action of the board might apply for relief. This right is subsequently referred to in the statute as a rehearing as to assessments made. The board is empowered reasonably to regulate the exercise of the right, but it cannot deny the substance of the privilege, which includes the right to petition and offer evidence. In other words, to borrow somewhat from the language of the statute, the party is entitled "to be reheard as to the assessment made," and it is the assessment finally determined upon by the board, whether indicated by a change of the original assessment or an order which, in effect, confirms the same, which is the governing assessment. That there was a rehearing in this matter, at which evidence was received that appellee's entire property was worth at the time of the appeal $3,500,000, is not denied, and it further appears, or at least may be assumed, that said board, upon said rehearing, exercising its judgment as an expert body of appraisers, and acting in the light of all of the facts before it, and required by law to be considered, fixed and determined the final assessment and dismissed the appeal.

As was said in *Chicago, etc., R. Co.* v. *Babcock* (1907), 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636: "Within its

[the tax board's] jurisdiction, except, as we have said, in the case of fraud or a clearly shown adoption of wrong principles, it is the ultimate guardian of certain rights.    The State has confided those rights to its protection and has trusted to its honor and capacity as it confides the protection of other social relations to the courts of law.''    Fraud not being charged in this case, it was incumbent upon the bridge company to show the adoption of some wrong principle of assessment, which, in effect, ousted the board of its jurisdiction, as by the indirect assessment of property which did not have a situs in the State.    The case of *Hart* v. *Smith* (1902), 159 Ind. 182, 58 L. R. A. 949, 95 Am. St. 280, which is much relied on by counsel for appellee, gives no countenance to the view that such assessments are open to collateral attack on account of overvaluation. In that case the state board had increased the taxpayers' schedule, not in valuing their property as returned, but on account of the value of the good-will of a partnership, a property interest which was as much beyond the power of the board to subject to assessment as property belonging to a nonresident and without the bounds of the State.    We held in that case that it was competent for the plaintiffs to show that the board had added to the aggregate assessment on account of the attempted assessment of property not taxable under the law, as the board was not valuing the various items of personal property returned, but was adding to the total an assessment on account of the good-will the aggregate property was supposed to possess, an act which was wholly unauthorized.    See *Raymond* v. *Chicago Union Traction Co.* (1907), 207 U. S. 20.

It cannot be denied that a railroad company's ownership of very valuable terminal property without the bounds of the State, which is out of all proportion to an equal length of right of way within the State, may render the mileage rule, as an ultimate or controlling test of value, wholly inadmissible.    *Pittsburgh, etc., R. Co.* v.

*Backus* (1894), 154 U. S. 421, 431, 14 Sup. Ct. 1114, 38 L. Ed. 1031; *Fargo* v. *Hart* (1904), 193 U. S. 490, 499, 24 Sup. Ct. 498, 48 L. Ed. 761. But, viewing the property of appellee as an organic unit, there can be no question concerning the right of the State to subject that part of the property within its boundaries to its just proportion of assessment, in view of its value as possessing an organic relation to the entire system. *Cleveland, etc., R. Co.* v. *Backus* (1894), 154 U. S. 439, 14 Sup. Ct. 1122, 38 L. Ed. 1041; *Pittsburgh, etc., R. Co.* v. *Backus, supra; Western Union Tel. Co.* v. *Taggart* (1896), 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49; *Adams Express Co.* v. *Poe* (1897), 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683; *Adams Express Co.* v. *Poe* (1897), 166 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965; *Fargo* v. *Hart, supra.*

It is to be observed that in this case there is no allegation nor showing whatever of the value of the Kentucky terminals or of any part thereof, and notwithstanding some general charges from which it may be inferred that such terminals are capable of being used, and to some extent are used, independently of the bridge, yet it remains that the whole property is used for, or designed as a part of, the terminal system of two connecting lines of railway. In these circumstances no adequate view of the value of the Indiana property could be obtained except upon a consideration of the entire property. The charges in the complaint and the affidavits introduced upon the hearing in the court below do not show that on rehearing the board went further in fixing the final assessment than to consider the character of the Kentucky property as affording one of the side-lights upon the value of the Indiana portion, or, at most, that the property in Kentucky was considered to the extent that thereby the Indiana portion was increased in value on account of its earning capacity, present or potential. All of the Louisville property was not only owned by appellees, but had been acquired for, and it may be inferred was adapted to, the general purpose, and we cannot say that the relation of each and

every part thereof might not properly be regarded by the board as enhancing the money-earning possibilities of the Indiana property, and therefore increasing its present value. The relation of appellee's various properties is far from attenuated. Indeed, we should hesitate to assert that the fact that appellee's railroad property extended into a great city might not of itself affect the physical value of such property where located. Ordinarily, a lot lying near a great city is of more value than one remote from human habitation. The presumption is strong that due consideration was given by the board to all evidence and explanations which went to the question of the value of such property, and to the relation or otherwise which it bore to the entire system. Evidence of cost is not controlling (*Western Union Tel. Co.* v. *Taggart, supra*), and so long as the board kept within its jurisdiction in valuing the Indiana property the courts cannot relieve from the consequences of an overvaluation. *Western Union Tel. Co.* v. *Taggart, supra.*

The trial court is directed to dissolve the temporary injunction heretofore granted.

The interlocutory order granting a temporary injunction is reversed, and the court directed to overrule the motion therefor, and for further proceedings not inconsistent with this opinion.