Larry J. ADAMS; Lena M. Adams; Walter L. Vandybogurt; American Truck Stops of Indiana, Inc.; and Tri-State Oasis, Inc., Plaintiffs,

v.

STATE of Indiana, Indiana Department of Revenue; M.F. Renner, Commissioner of Indiana Department of Revenue; James W. Poe, Administrator, Indiana Department of Revenue, Motor Fuel Tax Division; and Jack Hanna, Defendants.

Civ. No. F 85–279.

United States District Court, N.D. Indiana, Fort Wayne Division.

Nov. 27, 1985.

Donald C. Swanson, Jr. and Stanley L. Campbell, Swanson & Campbell, Fort Wayne, Ind., for plaintiffs.

David A. Redmond and James R. Green, Deputy Attys. Gen., Indianapolis, Ind., for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the defendants' motion to dismiss. The parties have fully briefed the issues raised by the motion. For the following reasons, the motion to dismiss will be granted.

This cause arises out of the assessment of a Special Motor Fuel Tax by the defendant Indiana Department of Revenue pursuant to the provisions of I.C. 6–6–2.1–101, *et seq.* In February, 1985, the Motor Fuel Tax Division of that Department assessed

taxes in the amount of $309,317.63 against American Truck Stops of Indiana, Inc., a corporation whose shareholders were plaintiffs Larry Adams, Lena Adams, and Walter Vandybogurt, as well as assessing $96,908.38 against Larry Adams. The plaintiffs have brought this action under 42 U.S.C. § 1983, seeking a permanent injunction against the collection of the assessment, and damages from defendant Jack Hanna, an investigator for the Motor Fuel Tax Division, as well as a pendent state claim for interference with business relationships against Hanna.

In deciding a motion to dismiss for failure to state a claim, this court must take the well pleaded factual allegations of plaintiff's complaint as true. *Ashbrook v. Hoffman,* 617 F.2d 474 (7th Cir.1980). A complaint should be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). However, *Conley* has never been interpreted literally. *Sutliff, Inc. v. Donovan Companies,* 727 F.2d 648, 654 (7th Cir.1984). The test is whether a complaint contains either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984). This court must consider the complaint in the light most favorable to the plaintiff and must resolve every reasonable doubt in favor of the claimant. *Henry C. Beck Co. v. Fort Wayne Structural Steel,* 701 F.2d 1221 (7th Cir.1983). "The heavy costs of modern federal litigation ... counsel against launching the parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint." *Sutliff,* 727 F.2d at 654.

Viewing the complaint in light of these principles, the relevant facts appear to be as follows. Plaintiffs Larry and Lena Adams and Walter Vandybogurt were shareholders and officers of American Truck Stops of Indiana, Inc. ("American") and Tri-State Oasis, Inc. ("Tri-State"). American operated a truck stop in Pierceton, Indiana, selling fuel, gasoline and other services, while Tri-State operated a truck stop/restaurant in Tekonsha, Michigan.

On November 28, 1984, Jack Hanna appeared at the American truck stop in Pierceton and told Larry Adams and Vandybogurt that there was $5,000.00 in special fuel tax owing and that he was there to lock and seal the pumps of the truck stop. Adams and Vandybogurt offered to pay the tax immediately, but Hanna refused to accept the payment and proceeded to lock the pumps. The pumps stayed locked for four days, and American lost business and good will as a result, and was eventually forced to permanently close and cease its business activities.

On February 3, 1985, the defendants State of Indiana, Indiana Department of Revenue, M.F. Renner, as Commissioner of the Department of Revenue, and James W. Poe, as Administrator of the Department of Revenue, issued a notice of tax due under the special motor fuel tax statutes to American in the amount of $309,317.63, and to Larry Adams in the amount of $96,908.38. The amount of the assessments was based on a special fuel tax investigation conducted by Hanna. On March 25, 1985, counsel for the plaintiffs notified the state that the plaintiffs were protesting the assessments because the fuel stored at the American truck stop in Pierceton had been transferred to Tri-State's truck stop in Michigan, which the plaintiffs contend makes the fuel exempt from taxation under I.C. 6–6–2.1–301.

An administrative hearing was scheduled for May 8, 1985 at 2:00 p.m. in Indianapolis, Indiana. With knowledge that the plaintiffs located themselves at the Tri-State Michigan location, the defendants nevertheless did not send notice of the hearing to the plaintiffs. In fact, the plaintiffs found out about the hearing only because Hanna called the Tri-State truck stop on the afternoon of the 8th. When Adams' counsel called down to Indianapolis, the Motor Fuel Tax Division hearing officer, Madeline

Chandler, confirmed that no notice had been sent to the Tri-State address or to counsel, but had been sent to the Pierceton address. Chandler advised counsel that no meaningful continuance of the hearing would be granted, and that the plaintiffs' protest would be denied for failure to appear at the hearing. This denial was memorialized in a letter issued May 16, 1985 by the Motor Fuel Tax Division.

The plaintiffs contend that the assessments at issue here were based on false information contained in Hanna's investigation report. Hanna knew the information was false, and the investigation and assessments were part of a pattern of harassing the plaintiffs to pressure them into aiding Hanna and Dennis S. Guillaume, an Indiana State Police officer, in a criminal investigation. Hanna's harassment occurred not only at the American truck stop, but also at the Tri-State location in Michigan and at the Fort Wayne offices of Ortho-Manor, Inc., an orthopedic supply store run by Larry and Lena Adams. As a result of Hanna's actions, American has ceased to do business, and Tri-State and the Adamses have been forced into involuntary bankruptcy.

Count I of the complaint alleges that the assessment of the taxes and the denial of plaintiffs' protest deprived the plaintiffs of due process under the fourteenth amendment. Count I seeks a permanent injunction against the State, the Department of Revenue, and their agents preventing the enforcement or collection of any monies or properties pursuant to assessments for special fuel taxes. Count II alleges that Hanna, acting under color of state law, violated plaintiffs' fourteenth amendment rights and seeks damages for the losses suffered as a result of Hanna's action. Count III seeks damages from Hanna under the state law theory of interference with business relationships.

The defendants' motion to dismiss Count I offers three grounds for dismissal: (1) the Anti-Injunction Act, 28 U.S.C. § 1341, prevents the issuance of an injunction to restrain the collection of a tax; (2) sovereign immunity prevents suit against the state or its agencies and agents; and (3)

notions of comity. Defendants urge dismissal of Count II on principles of comity and because the plaintiffs fail to state a claim under 42 U.S.C. § 1983, given the principles of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Finally defendants argue that Count III should be dismissed for lack of pendent jurisdiction when the main federal claims are dismissed.

### Count I—Anti-Injunction Act and Comity

Defendants seek dismissal of Count I, which seeks a permanent injunction against the assessment of special fuel taxes, on the basis of the Anti-Injunction Act, 28 U.S.C. § 1341 (also referred to as the Tax Injunction Act), which provides:

The district court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy, and efficient remedy may be had in the courts of such state.

The Act clearly prohibits this court from issuing an injunction in this case if a "plain, speedy, and efficient remedy" exists in the Indiana courts. *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 512, 101 S.Ct. 1221, 1228, 67 L.Ed.2d 464 (1981); *Fromm v. Rosewell*, 771 F.2d 1089, 1092 (7th Cir. 1985).

As plaintiffs readily admit, there is a remedy under Indiana law. I.C. 6–6–2.1–1105 provides:

A person who claims that any tax, penalty, or interest was erroneously or illegally collected under this chapter [Special Fuel Tax] or that a refund was wrongfully denied, may initiate suit against the state. The circuit court of Marion County has original jurisdiction of the suit, and the suit must be commenced within two (2) years after:

(1) the date of payment of the tax, penalty, or interest; or

(2) the date of final rejection by the administrator of the refund claim.

The real issue here is whether the remedy is "plain, speedy and efficient."

The Supreme Court has made it clear that the principal purpose of the Anti-Injunction Act was "to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *California v. Grace Brethren Church,* 457 U.S. 393, 408, 102 S.Ct. 2498, 2508, 73 L.Ed.2d 93 (1982); *Rosewell,* 450 U.S. at 522, 101 S.Ct. at 1233. The Act embodied Congress' recognition that "the autonomy and fiscal stability of the States survive best when state tax systems are not subject to scrutiny in federal courts." *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 102–03, 102 S.Ct. 177, 179, 70 L.Ed.2d 271 (1981). Consistent with this view, the *Rosewell* Court defined "plain, speedy and efficient" in procedural terms:

> On its face, the "plain, speedy and efficient remedy" exception appears to require a state-court remedy that meets certain minimal *procedural* criteria ... The overall purpose of the Tax Injunction Act is consistent with the view that the "plain, speedy and efficient remedy" exception to the Act's prohibition was only designed to require that the state satisfy certain procedural criteria....

450 U.S. at 512, 522, 101 S.Ct. at 1229, 1233–34 (emphasis in original). The most important procedural criteria that the remedy must meet is that it provides a "full hearing and judicial determination" of the controversy, *id.* at 514, 101 S.Ct. at 1230, such that the taxpayer may assert his federal rights and secure a review in the Supreme Court. *Id.* at 513, 101 S.Ct. at 1229, *quoting Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 300–01, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943). The language of the Supreme Court's *Rosewell* decision appears to make it clear that the state remedy will be considered "plain, speedy and efficient" if the remedy, with the minimal procedural criteria built in, merely exists. *See Rosewell,* 450 U.S. at 515, 515 n. 19, 101 S.Ct. at 1230, 1230 n. 19.

The remedy provided by I.C. 6–6–2.1–1105 appears to contain the minimal procedural criteria required by *Rosewell.* That section allows a taxpayer who claims that the taxes paid were erroneously or illegally collected to sue the state in the circuit court of Marion County. The fact that the taxes must first be paid does not render the remedy procedurally inadequate; the *Great Lakes Dredge* Court found that a remedy which requires payment and then a suit for a refund was "adequate," 319 U.S. at 300, 63 S.Ct. at 1074, and *Rosewell* points out that Congress was aware of the state practice of requiring payment under protest before entertaining a suit for refund, and approved of such a methodology because it allowed states to operate during protracted tax litigation. 450 U.S. at 523, 101 S.Ct. at 1234. The Indiana statute allows for a plaintiff to claim the tax was erroneously or illegally collected; the plaintiffs' claims of constitutional violations in the manner and method of Hanna's investigation and report, the assessment on the basis of that report, and the failure to offer a meaningful hearing on the protest of the assessment, can all fall under the "illegally collected" basis for a suit under I.C. 6–6–2.-1–1105. Thus, 6–6–2.1–1105 appears to be a "plain, speedy and efficient remedy" as defined by *Rosewell.*

The plaintiffs argue that the remedy provided in I.C. 6–6–2.1–1105 is unavailable to them because they are unable to pay the assessment so as to claim a wrongful payment and seek a refund. Prior to the Supreme Court's decision in *Rosewell,* the Seventh Circuit appeared to be sympathetic to this claim. In *28 East Jackson Enterprises, Inc. v. Cullerton,* 523 F.2d 439 (7th Cir.1975), *cert. denied,* 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976), the Seventh Circuit stated that where a plaintiff does not have and cannot borrow sufficient funds to pay the full tax, a payment under protest and suit for refund remedy available under Illinois statutes was "not available." In *LaSalle Natl Bank v. Rosewell,* 604 F.2d 530 (7th Cir.1979), *rev'd,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981), the Seventh Circuit read earlier Supreme Court precedent as expressing a "concern with the economics of dispute resolution ... so while redress was theoretically possible in the state courts, the remedy's diseconomies rendered it inadequate," citing *28 East Jackson.* 604 F.2d at 536. The court

therefore held that while relief was possible under the Illinois suit for refund statute, the fact that the state did not pay interest on the taxes collected "imposes undue costs on taxpayers seeking redress" so as to make the remedy inadequate. *Id.*

The Supreme Court's *Rosewell* decision reversed *LaSalle Natl Bank,* completely ignoring the economic effect on the taxpayer in determining that the remedy was adequate so as to invoke the Anti-Injunction Act. The focus on the procedural aspect of the remedy—i.e., does the remedy provide a full hearing—strongly suggests that the *Rosewell* Court adopted a view of the "plain, speedy and efficient remedy" language which looks only to the process and not the situation of the taxpayer in that process. In a subsequent case, the Seventh Circuit abandoned its focus on economic impact and "diseconomies" when it held that a taxpayer who would have to register its trucks with the State of Wisconsin, thereby incurring twenty to thirty thousand dollars in expense, in addition to having to pay $800,000.00 in fees, cannot claim that the state's suit for refund statute was inefficient because of "undue hardship." *Schneider Transport, Inc. v. Cattanach,* 657 F.2d 128, 133 (7th Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982). The *Schneider* court's analysis suggests a focus only on the process:

> The Tax Injunction Act, however, is concerned only with the procedural sufficiency of a state remedy. *Rosewell* ... Indeed, Schneider's argument that "undue hardship" renders a remedy insufficient is drawn from a statement in the *Rosewell* decision which concerned procedural matters ... As its reference was to the procedural elements of the remedy, it does not apply to Schneider's complaint that compliance will cost it money. As in *Rosewell,* Schneider's complaint addresses "a more substantive concern ... The procedural method for correction of [its] tax bills remains the same," whether Schneider must incur additional expenses or not. An economic burden does not affect Schneider's ability to obtain a "full hearing and judicial determination of its

claim." 450 U.S. at 514, 101 S.Ct. at 1230.

657 F.2d at 133–34. Thus, it is doubtful that the Seventh Circuit would continue to follow its pre-*Rosewell* precedents—the economic burden posed by requiring prepayment of the tax does not affect the fact that the state remedy would provide the process necessary to invoke the Anti-Injunction Act.

■ Plaintiffs argue that an inability to pay is different from the situation where payment is a hardship but nevertheless possible. In the latter, the remedy is available, though at a price. But the former situation would, in the plaintiffs' eyes, leave them without a remedy in the state courts, so that a federal cause of action should be recognized. However, the focus on process set forth in *Rosewell* does not make such a distinction. The Ninth Circuit, interpreting *Rosewell,* has thrice held that a "demonstrated inability to pay a tax does not avoid the jurisdictional bar of § 1341." *Air Polynesia, Inc. v. Freitas,* 742 F.2d 546, 548 (9th Cir.1984); *Redding Ford v. California State Bd. of Equalization,* 722 F.2d 496, 497 (9th Cir.1983), *cert. denied,* — U.S. —, 105 S.Ct. 84, 83 L.Ed.2d 31 (1984); *Wood v. Sargeant,* 694 F.2d 1159, 1160 (9th Cir.1982). The rationale behind this holding is simple—the "plain, speedy and efficient remedy" language is a narrow exception to the general policy of the Anti-Injunction Act, and so should be narrowly construed. *Redding Ford,* 722 F.2d at 497, citing *Rosewell,* 450 U.S. at 524, 101 S.Ct. at 1233–34. In a post-*Rosewell* world, the test is "whether a state remedy ever existed for the plaintiffs," not whether that remedy can in fact be utilized. *Sappington v. Commonwealth of Pennsylvania,* 535 F.Supp. 429, 431 (E.D.Pa.1982) (fact that a state remedy is now unavailable because of the statute of limitations does not render the remedy insufficient). Thus, the plaintiffs' inability to pay the special fuel tax assessments here does not render the remedy of I.C. 6–6–2.1–1105 unavailable or inefficient. I.C. 6–6–2.1–1105 is a "plain, speedy and efficient remedy" for purposes of the Anti-Injunction Act, and thus the court does not

have jurisdiction over Count I of the complaint.

◼ Independent of whether the court is correct as to the adequacy of 6–6–2.1–1105, the plaintiffs here may have a second state remedy: a state action for injunctive relief. The general rule in Indiana is that an injunction against the enforcement or collection of a tax cannot issue until the taxpayer pays that part of the tax which he concedes is legally due. *Chadwick v. City of Crawfordsville*, 216 Ind. 399, 24 N.E.2d 937 (1940); *City of Jeffersonville v. Louisville & J. Bridge Co.*, 169 Ind. 645, 83 N.E. 337 (1908). However, the Indiana Supreme Court has recognized that this general rule "is not applicable to cases where the entire tax fails on account of an assessment wholly illegal, as it is impossible for the court to determine an amount due; there being no legal tax assessed." *Wilt v. Bueter*, 186 Ind. 98, 115 N.E. 49, 49 (1917). Here, the plaintiffs claim that they owe no special fuel taxes because the fuel that was stored at the American truck stop in Pierceton was transported to and sold in Michigan, thereby exempting the fuel from tax by virtue of I.C. 6–6–2.1–301(1). That section provides that "special fuel sold for export or exported from Indiana to another state, territory, or foreign country" shall be exempt from the special fuel tax. Taking these facts as true, it seems possible for the plaintiffs to argue that the special fuel tax assessments were "illegal" in that they were made in disregard for I.C. 6–6–2.1–301(1). Under *Wilt*, they could seek an injunction without having to pay any taxes at all. The Seventh Circuit has held that a district court does not have jurisdiction over a suit seeking to restrain the collection of state taxes when a state action for injunction is available, *28 East Jackson*, 523 F.2d at 441–42, because "a remedy by injunction is a plain, speedy and efficient remedy within the meaning of 28 U.S.C. 1341." *Id.* at 441. Thus, the plaintiffs here have a second means by which to pursue their claim in state court, thereby depriving this court of jurisdiction over Count I.

◼ The defendants also urge dismissal on the basis of principles of comity. The Supreme Court long ago recognized the important and sensitive nature of state tax systems and the need for federal court restraint:

> It is upon taxation that the several states chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government and thereby cause serious detriment to the public.

*Dows v. Chicago*, 78 U.S. (11 Wall.) 108, 110, 20 L.Ed. 65 (1871). As a result, the Supreme Court has held that principles of federalism, expressed in concepts of comity, bar § 1983 actions against the validity of state taxes in federal courts. *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. at 116, 102 S.Ct. at 186. *See Bd. of Education of Valley View Community School Dist.*, 713 F.2d 1316, 1320 (7th Cir. 1983). It is clear from these precedents, and from the principles of federalism that pervade them, that this court must refrain from interfering in the operations of the State of Indiana. That state has defined the procedures and remedies available for those challenging a special fuel tax assessment; this court must respect Indiana's decisions as to its tax collection procedures. Therefore, Count I must be dismissed on principles of comity as well.

Precisely because the court finds that Count I must be dismissed both because of the Anti-Injunction Act and comity, it will not address the defendants' third ground for dismissal: sovereign immunity.

### Count II—Comity and *Parratt v. Taylor*

Count II seeks damages under § 1983 from Hanna only. Hanna argues that Count II should be dismissed both on the basis of the principles of comity outlined above, and on the basis of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), because an adequate postdeprivation state remedy exists.

In *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), the Supreme Court held that a § 1983 claim for damages against county officials who ran a state tax collection system was barred by principles of comity when plain, adequate and complete state remedies exist. 454 U.S. at 116, 102 S.Ct. at 186. The rationale for this decision was that

> damages actions, no less than actions for an injunction, would hale state officers into federal court every time a taxpayer alleged the requisite elements of a § 1983 claim. We consider such interference to be contrary to "the scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts."

*Id.* at 115–16, 102 S.Ct. at 186, *quoting Matthews v. Rodgers,* 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932). The Seventh Circuit recently followed this rule in *Fromm v. Rosewell,* 771 F.2d 1089, 1092 (7th Cir.1985). Because the Supreme Court made it clear that "plain, adequate and complete" for purposes of comity meant the same as "plain, speedy, and efficient" does under the Anti-Injunction Act, 454 U.S. at 116 n. 8, 102 S.Ct. at 186 n. 8, and this court has already found that I.C. 6–6–2.1–1105 and the injunction provisions of Indiana law are "plain, speedy and efficient" for purposes of the Anti-Injunction Act, this damage claim against Hanna must be dismissed on principles of comity.

Hanna also offers an alternative ground for dismissing Count II. He argues that the principles of *Parratt v. Taylor* control this case. In *Parratt,* a state prisoner sued state prison officials under § 1983 alleging that their negligent loss of a hobby kit he had ordered through the mail deprived him of property without due process of law. The Supreme Court held that the negligent deprivation of property to an individual does not violate the Due Process Clause of the fourteenth amendment if the state makes available a meaningful postdeprivation remedy. 451 U.S. at 543–44, 101 S.Ct. at 1917. The Supreme Court has subsequently extended *Parratt* to intentional deprivations of property as well. *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984).

Two refinements emerge from the *Parratt* doctrine. The first is that in order for *Parratt* to apply, the loss of property must be occasioned by a random, unauthorized act of a state employee, and not by conduct pursuant to established state procedure. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982). The rationale behind this refinement is that losses occasioned by random acts cannot be predicted, so that that state cannot be expected to provide a meaningful predeprivation hearing, *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916, while established state procedure would allow for a predeprivation hearing. The second refinement is that *Parratt* applies only to claims of procedural due process, that is, claims under the fourteenth amendment; *Parratt* will not bar a claim of a violation of some other substantive constitutional right. *See Wolf-Lillie v. Sonquist,* 699 F.2d 864, 871 (7th Cir.1983). The court must therefore determine what claim the plaintiffs present here, and then examine it in light of *Parratt.*

The complaint reveals that Hanna's harassment and intentional misrepresentations produced primarily economic results. The plaintiffs contend that Hanna's actions resulted in the tax assessments against American and Larry Adams, as well as the business ruin of American and the bankruptcies of Larry and Lena Adams and Tri-State. Thus, the plaintiffs contend that Hanna's actions deprived them of property rights in their businesses by causing the assessments and financial ruin.[1] Such a right does not implicate substantive consti-

---

1. An argument could be made (although the complaint does not even hint at it) that Hanna's actions also deprived the plaintiffs of a liberty interest in conducting their businesses. It is not at all clear that such a claim would actually amount to a cognizable liberty interest; research does not reveal cases which recognize conduct of a business as a liberty interest in this context. A closely related area, involving damage to an individual's reputation which imping-

tutional provisions; the claim here is simply one of a deprivation of property without due process of law, a claim for procedural due process under the fourteenth amendment. In addition, the complaint indicates that Hanna's acts were random and unauthorized; there is no allegation that Hanna acted under an established state procedure or that any state officials were involved in Hanna's harassment and misrepresentations other than a State Police officer who is not a defendant here. Thus, in light of the two refinements described above, the *Parratt* analysis would apply.

The issue under *Parratt* is whether there is a sufficient postdeprivation remedy in the state so that the procedural due process concerns implicated by the property interest can be satisfied without reference to § 1983. Hanna points to the Indiana Tort Claims Act, I.C. 34–4–16.5–1, *et seq.*, as a state remedy which was available to the plaintiffs. The Act creates a method whereby tort claims against a governmental entity (including the state and state agencies) as well as governmental employees can be brought. I.C. 34–4–16.5–6 allows for a claim against the state provided

that the Attorney General and the appropriate agency receive notice of the claim within 180 days after a loss occurs, and I.C. 34–4–16.5–12 requires that the state deny the claim as a prerequisite to bringing suit. I.C. 34–4–16.5–3 then limits the liability of the state in these pertinent respects:

> A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (5) the initiation of a judicial or administrative proceeding;
> (6) the performance of a discretionary function;
> (7) the adoption and enforcement of or failure to adopt or enforce a law, including rules and regulations, unless the act of enforcement constitutes false arrest or false imprisonment;
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (13) misrepresentation if unintentional. . . .

The issue here is whether the plaintiffs can avail themselves of this remedy. The biggest hurdle is I.C. 34–4–16.5–3(5–7), which might offer a defense to Hanna.[2]

---

es on the individual's ability to obtain a job or carry on his profession, reveals that a liberty interest is implicated only when (1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism or subversive acts, or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities. *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir.1985). Assuming that the plaintiffs here can make out a liberty interest claim, however, the analysis would be the same: such liberty interests only implicate procedural due process under the fourteenth amendment, and not some substantive constitutional provision.

2. The plaintiffs might argue that the 180 day notice requirement of I.C. 34–4–16.5–6 prevents them from now bringing suit under the Tort Claims Act. The section provides that notice must be provided within 180 days "after the loss occurs." There is at least a plausible argument to be made that the loss arising from the assessment would not occur until some part of the assessment is paid, which plaintiffs have made clear has not yet occurred. Economic loss like the ceasing of business operations or the filing of bankruptcy would not occur until the date of that event; if one presumes that the plaintiffs

were still in business after the May 8, 1985 hearing in Indianapolis, then it may be possible to file timely notice of the loss. Further, the notice provisions of the Act are to be read in conjunction with the purpose of the Act. Indiana courts have held that substantial compliance with the notice provisions will suffice when the purpose of the Act has been satisfied. *Galbreath v. City of Indianapolis*, 253 Ind. 472, 255 N.E.2d 225 (1970); *Bd. of Aviation Commissioners of St. Joseph County v. Hestor*, 473 N.E.2d 151, 154 (Ind.App.1985). The purpose of the Act is to advise the political subdivision of an incident so that it may promptly investigate the surrounding circumstances. *Hestor*, 473 N.E.2d at 154. While actual knowledge of an incident by the political subdivision will not relieve a claimant of the duty to give notice, *id.; Burggrabe v. Bd. of Public Works of City of Evansville*, 469 N.E.2d 1233 (Ind.App.1984), substantial compliance can be sufficient, and can be achieved without any writing at all. *Delaware County v. Powell*, 272 Ind. 82, 393 N.E.2d 190, 192 (1979); *Lawrence County Commissioners v. Chorely*, 398 N.E.2d 694 (Ind.App.1979). The filing of the complaint in this case may be sufficient to constitute substantial compliance with the notice requirements. The court therefore concludes that the 180 day notice requirement would not bar a Tort Claims Act suit.

Because Hanna only filed the investigative report which led the Motor Fuel Tax Division to issue the tax assessments, and the administrative proceedings concerning the assessments were in fact instituted by the plaintiffs, it does not appear that Hanna could assert limitation (5) above. Further, while an investigation of a potential crime is considered a "discretionary function" under the statute, *see Crouch v. Hall,* 406 N.E.2d 303, 304 (Ind.App.1980), it is clear that the statute does not give absolute immunity to the investigator or enforcer of a law. The *Crouch* court quoted the language of *Clipse v. Gillis,* 20 Wash.App. 691, 695–96, 582 P.2d 555, 558 (1978), which stated that *"[i]n the absence of corrupt or malicious motives,* public officers are not personally liable for errors or mistakes of judgment in the performance of duties involving the exercise of judgment and discretion." (Emphasis supplied). This concept was expanded by the court in *Seymour Natl. Bank v. State,* 179 Ind.App. 295, 384 N.E.2d 1177 (1979):

> to say that the legislature intended the state and its employees to be immune from actual implementation of the decision to enforce a law would be to sanction and permit negligent and even reckless implementation of such a decision ... We do not believe the legislature intended "enforcement" [in I.C. 34–4–16.-5–3(7)] to shield negligent and reckless conduct in the carrying out of a decision to enforce the law.

*Id.* at 1186. The allegation that Hanna intentionally misrepresented the facts of his investigation so as to cause an exorbitant assessment of special fuel taxes due would surely fall within this recognized exception to I.C. 34–4–16.5–3(6–7). Further, the intentional nature of the misrepresentation would take this claim outside I.C. 34–4–16.5–3(13) as well. It therefore appears that the plaintiffs could seek damages under the Act, thereby giving them an

adequate postdeprivation remedy in the state courts. Thus, *Parratt* and *Hudson v. Palmer* counsel that the plaintiffs' § 1983 claim in Count II must be dismissed because the procedural due process guaranteed by the fourteenth amendment is provided by the State of Indiana.

### Count III—Pendent State Claim

Count III asserts a state law claim against Hanna for interference with the business relationships of the plaintiffs. The complaint acknowledges that the claim is a pendent state claim.

Pendent jurisdiction is "a judge-made doctrine of expediency and efficiency derived from the general Art. III language conferring power to hear all 'cases' arising under federal law or between diverse parties." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). It is a "doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them." *Id.* at 726, 86 S.Ct. at 1139.

The Seventh Circuit has "indicated a strong preference for the dismissal of pendent or ancillary claims whenever the district court disposes of the federal claim or claims prior to trial." *United States v. Zima,* 766 F.2d 1153, 1158 (7th Cir.1985); *American Natl. Bank & Trust Co. v. Bailey,* 750 F.2d 577, 581 (7th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985). The district court faced with pendent state claims after dismissing the federal claims must follow a two-step process: (1) it must determine whether it had the power to exercise jurisdiction over the pendent claim (because the

---

Finally, even if the 180 days has run, so that a claim under the Act is now time-barred, the remedy would still be adequate for purposes of a *Parratt* analysis. Justice Rehnquist's plurality opinion made it clear that the fact that a remedy was available but unused, or that it did not provide all the relief sought "does not mean that

the state remedies are not adequate to satisfy the requirements of due process." 451 U.S. at 543–44, 101 S.Ct. at 1917. Because the court finds that a claim under the Act could be brought, the 180 day notice requirement's effect on plaintiff's potential Tort Act claims is of no moment.

federal claim was substantial and there was a common nucleus of operative fact between the state and federal claims), and (2) it must exercise its discretion to determine whether such jurisdiction should be retained. *Zima*, 766 F.2d at 1158. It appears that the first step is satisfied in this case, and thus the court must consider the factors of judicial economy, convenience and fairness to the litigants in determining whether to exercise its discretion and retain jurisdiction of Count III.

Because Count III only seeks damages from Hanna, it seems obvious that the plaintiffs will seek to obtain the relief sought in Count I in a state court proceeding, whether it is brought pursuant to I.C. 6–6–2.1–1105 or as an equitable action for injunctive relief. Plaintiffs may also decide to pursue their state remedies against Hanna under the Tort Claims Act. This separate state lawsuit or lawsuits would pose a serious judicial diseconomy by creating multiple lawsuits to decide one dispute. Multiple lawsuits also pose problems of convenience for the litigants who must do twice or thrice the work that one lawsuit would pose. The ability to bring all of the issues in this case within the confines of a single lawsuit in the state court would allow for a single test of the propriety of the assessment and of Hanna's actions in bringing the assessment about. That is economical, convenient, and fair to the litigants. Therefore, the court will exercise its discretion and dismiss the pendent state claim.

### Conclusion

For the reasons stated above, the motion to dismiss the complaint will be GRANTED.