INDIANA STREAM POLLUTION CONTROL BOARD, Appellant (Plaintiff Below),

v.

TIPPECANOE SANITARY LANDFILL, INC., Appellee (Defendant Below).

No. 86A03–8608–CV–245.

Court of Appeals of Indiana, Third District.

Aug. 10, 1987.

Rehearing Denied Oct. 15, 1987.

Linley E. Pearson, Atty. Gen., Deborah E. Albright, Deputy Atty. Gen., Indianapolis, for appellant.

Louis Pearlman, Jr., Lafayette, for appellee.

STATON, Judge.

The Indiana Stream Pollution Control Board appeals the trial court's denial of its contempt petition against the Tippecanoe Sanitary Landfill. Because we reverse, we consider only the following issues:

Did the trial court err in failing to find that the landfill:

(1) Operated and advertised without a permit in violation of 330 IAC 4–5–1 and 330 IAC 4–5–3?

(2) Deviated from its approved construction plans without Board approval?

This action was originally brought to enforce an order of the Indiana Stream Pollu-

tion Control Board (the Board) involving the Tippecanoe Sanitary Landfill. A permanent injunction against the Landfill was entered by the court and by agreement of the parties in 1980. The injunction required the Landfill to comply with SPC–18 (renumbered in 1983 as 330 IAC 4).

Later that year the Board filed a contempt petition, which resulted in a final order assessing penalties against the Landfill and again requiring future compliance with applicable regulations.

In 1983, the Board filed yet another contempt petition. After a hearing, the court found the Landfill in contempt for failing to maintain and sample monitoring wells.

Finally, on February 13, 1986, the Board filed the contempt petition at issue here. Later, the trial court found against the Board on every issue in the contempt petition.

■ The punishing or refusal to punish for contempt is generally a matter left to the sound discretion of the trial court. *Clark v. Clark* (1980), Ind.App., 404 N.E.2d 23, 37. Nevertheless, when the trial court's action is clearly against the logic and effect of the circumstances, an abuse of discretion will be found on appeal. *In Re Marriage of Osborne* (1977), 174 Ind. App. 599, 369 N.E.2d 653, 656.

The regulations applicable to this cause prohibit any sanitary landfill from operating without a valid permit,[1] advertising unless it has a valid operating permit,[2] or deviating from its approved construction plans without the Board's prior approval.[3]

### I. *Operating and Advertising Without a Permit*

The Board's contempt petition alleged the Landfill was both operating and advertising when it had no permit. The Board, in its opening statement, indicated it would present evidence on this issue. The Board's evidence at the proceeding showed that the Landfill had a permit until February 1983; that it had applied for a permit in 1983; that the application was denied; and that the denial was upheld by the Environmental Management Board in December of 1983. Specifically, an employee for the Land Pollution Control Division of the Indiana State Board of Health testified that he maintained records reflecting the permit status of the Landfill, that he had searched those records, and that the Landfill held no permit. Nevertheless, the State Board of Health's field inspector testified that the Landfill was both operating and advertising during each of his several inspections during 1984, 1985, and 1986.

The Landfill did not object to the introduction of the testimony regarding the Landfill's operating or advertising without a permit, nor did it introduce evidence to rebut that testimony. The trial court, however, ruled as follows:

> At the pre-trial conference herein counsel for the parties represented to the Court that the matter of the validity of defendant's operating permit to operate a sanitary Landfill in the State of Indiana was in litigation, pending in the Indiana Court of Appeals, and accordingly the Court ruled at said conference that the issues ... would not be in issue in this cause.

However, the Court's pre-trial order regarding the conference, which is the order book entry page 94 of the record, reflects *only* the reassignment of trial date and a date for the exchange of witness and exhibit lists. The order did not purport to, nor did it, narrow the issues from those established in the pleadings.

Indiana Rules of Trial Procedure, Trial Rule 16(J), addresses the necessary components of the order emerging from the pre-trial conference:

**1.** 330 IAC 4–5–1. No person shall cause or allow the operation of a sanitary landfill without a valid operating permit issued by the Board.

**2.** 330 IAC 4–1–3. It shall be unlawful for any refuse disposal facility to have the term "sanitary landfill" or "landfill" in advertising or on signs unless such a facility holds a valid operating permit under this regulation....

**3.** 330 IAC 4–3–6. Any deviation from an approved plan shall first require approval by the Board or its designated agent for an amendment to the construction plan permit.

The Court *shall* make an order which recites the action taken at the conference, the amendments allowed to the pleading, *and the agreements made by the parties as to any of the matters considered which limit the issues for trial* to those not disposed of by admissions or agreement of counsel, and *such order when entered shall control the subsequent course of action* unless modified thereafter to prevent manifest injustice. [Emphasis added.]

■ It is well settled that a court of record speaks only through its order book entries. *State Farm Mut. Auto. Ins. Co. v. Glasgow* (1985), Ind.App., 478 N.E.2d 918, 924. Even a silent order book controls statements made from the bench regarding matters that ought to be reflected by an order book entry. *Id.* at 925. Thus, in *State Ex Rel. Mammonth v. Superior Court* (1976), 265 Ind. 573, 357 N.E.2d 732, a party cited an alleged conversation between the court and counsel to demonstrate that the party had given certain notice to the opposing party. The Indiana Supreme Court observed that there was no transcript of the conversation certified by the court reporter, nor was it made a part of the record. "More importantly, the alleged finding that notice was given ... is not an order book entry. It is a rule of long standing that the court speaks only through its order book." 357 N.E.2d at 733. The pre-trial order in the present case could not, therefore, eliminate the issue of whether the Landfill was operating and advertising without a valid permit.

■ Even if the pre-trial order had purported to eliminate the issue of whether the Landfill was operating and advertising without a permit, subsequent events would have rendered the order ineffective. The Board, in its opening statement, indicated that it would present evidence which would show the Landfill was operating and advertising without a permit. The Landfill made no objection. The Board then proceeded to present evidence at some length on the issue. Still the Landfill did not object. If the Landfill believed that the issues were not being tried, it is difficult to imagine why it would acquiesce in the introduction of such testimony.

Generally, the issues in a case are established by the evidence introduced at trial rather than by the pleadings. *James v. Brink & Erb, Inc.* (1983), Ind.App., 452 N.E.2d 414. In *James*, the defendant-employee was tried civilly for conversion of the employer's funds. The court found the employee liable for reimbursement of sales commissions he "earned" on the money he converted. On appeal, the employee argued that the commissions were neither sought in the complaint nor included as an issue to be tried in the pre-trial order. We held that the issue had been tried by implied consent pursuant to T.R. 15(B). We stated: "[B]efore a party may impliedly consent to the trial of an issue, he must receive some notice of that issue." Regarding the question of notice in *James*, we reasoned:

The opening statement and Carl Brinks's testimony established that the issue of sales commissions paid to James was being tried.... Therefore, by failing to object, James impliedly consented to the trial of the issue.

The present case presents the same situation. Since the issue was not treated in the pre-trial order (and therefore was not eliminated), the Landfill was on notice that the issue was available for litigation. Even if it had not been on notice at that time, by failing to object to the Board's opening statement and subsequent litigation of the issue, the Landfill impliedly consented to trial of the issue.

Given that the issue was before the court, we turn to the Landfill's argument that, first, the permit remained in effect until final determination of the application by the board or agency, and, second, pending judicial review, the denial of the permit was stayed.

■ The Landfill first asserts that Indiana Code 13–7–10–2(f) provides that a permit remains in effect until final determination of the application by the board or agency. The Landfill is correct. However, the Environmental Management Board's decision upholding the denial of the Land-

fill's permit was final in December 1983, well before the Board filed the present contempt petition. Therefore, any protection afforded the Landfill by IC 13-7-10-2(f) expired before the present case arose. This leaves only one remaining argument, which the Landfill states as follows: "IC 4-22-1-17 provides that, pending judicial review, the action is stayed." If the Landfill's position is that the operating permit is automatically resurrected until all appeals are exhausted, it is wrong.

IC 4-22-1-17 requires that, before a stay may be granted, the party desiring the stay must:

1. File a verified petition,
2. Show a reasonable probability that the order or determination appealed from is invalid or illegal, and,
3. File a bond.

Even if all the above is accomplished, the decision whether to grant a stay is discretionary with the trial court. The stay is, thus, by no means automatic, as the Landfill implies. Here, nothing in the record indicates that the Landfill filed a verified petition, made any showing that the order it appealed from was invalid or illegal, or filed a bond. And, nothing indicates a stay was ever granted. Thus, we cannot conclude that a stay permitted by IC 4-22-1-17 was in effect.[4]

From our review of the record, we are convinced the trial court's action is clearly against the logic and effect of the circumstances. We conclude that the trial court erred in ruling against the Board on the issue of whether the Landfill was operating and advertising without a permit.

## II. *Deviation from Approved Plans*

Independent of our conclusion on the issue of the Landfill's operating and advertising without a permit, other grounds require reversal.

### A. *Well Maintenance and Quarterly Sampling*

■ The Board introduced evidence which showed the Landfill had failed to maintain its monitoring wells and had failed to conduct quarterly sampling, both were required by its operating plan and by the court's order of 1980. The Landfill claims its evidence rebutted that introduced by the Board, stating: "In regard to the wells, the evidence is clear that quarterly samples were submitted." The Landfill points to pages 250-271 of the record in support of its position. However, the evidence to which the Landfill refers us supports not its position, but the Board's.

For example, Exhibits 17-20 appear on pages 251-254 of the record. The exhibits are reports indicating *unsuccessful* attempts to sample the monitoring wells. Each report reads: "no field tests." Each report also contains explanatory information. Exhibit 17 states: "Inaccessible well. No seal around well." Exhibit 18 contains the same information. Exhibit 19 reads: "No well cap. No seal around well." Exhibit 20 reads: "No seal around well. Black scum on inside of well casing. Appeared to have been underwater several times recently."

Page 265 of the record shows a letter from the Board to the Landfill. The letter states:

According to our records, the January, April and July water quality data for the Tippecanoe Sanitary Landfill are overdue. The staff requests that the test results be submitted as soon as possible.

In addition to this evidence pointed to by the Landfill, the record contains the Landfill's admission that one well, which the State geologist testified would have been most likely to first show contamination, was *never* sampled. It was destroyed and was replaced without Board approval by a well in a different location and at a different depth. Thus, the Board was deprived, for over two years, of data from perhaps the most important monitoring well at the

---

4. Assuming *arguendo* a stay had been granted, we question whether the trial court would have the power to, in effect, exercise the licensing power exclusively reserved to an executive agency. See, e.g., *Indiana Alcoholic Bev. v. Progressive Enterprises* (1972) 259, Ind. 315, 286 N.E.2d 836, 838 (stay cannot be granted where the effect would be to grant the losing party the right to continue operating beyond the date of an expired permit).

site. Even the Landfill's geologist admitted this was improper.

Thus, even examining the evidence pointed to by the Landfill, the conclusion is simply unavailable that the Landfill complied with its operating plan—and the court's order embodied in its permanent injunction—regarding maintenance and quarterly sampling of monitoring wells. Again, we are convinced that the trial court's action is against the logic and effect of the circumstances.

### B. *Levees*

 The state asserted at the hearing that the Landfill also deviated from its approved construction plans with regard to flood control levees. The court found against the Board, even though the operator of the Landfill and his agents made the following admissions: First, the levees were not completed prior to the use of areas three and four for disposal, contrary to the construction plans. Next, a levee which the plans required to be made out of solid clay were instead made of trash.

The Landfill's only attempt to rebut the Board's evidence was its "double dike defense" in which it claimed to have constructed two levees not shown on the approved plans to protect the site from flooding (in addition to the trash dike). There are two problems with the Landfill's position, as the Board points out. The first problem is substantive: The Landfill has cited no authority, and we are aware of none, which would relieve it from the necessity of seeking an amendment to its construction plans merely because it decided to build something different. Otherwise, the construction plans would be of little or no effect.

The second problem is evidentiary: Neither the Landfill's operator nor its engineer had the levees surveyed to determine their elevations. In fact, the engineer flatly denied this had been done, and admitted he did not know the elevations (which the plans required to be at "536 feet," apparently with reference to sea level). This may account for the fact that the area was observed by the Board's soil scientists to be flooded in the spring of 1985. The Land-

fill's engineer admitted that the changes were material changes in construction.

The Landfill's brief contains no argument regarding the levees, and we have found no evidence in the record which would contradict the Landfill's admissions at the hearing. We are left, therefore, with the conclusion that the trial court's action is against the logic and effect of the circumstances. The court erred in finding against the Board on the issue of whether the Landfill deviated from its approved plans without prior approval.

The trial court's ruling is reversed, with instructions to enter judgment for the Board.

RATLIFF, C.J., and HOFFMAN, J., concur.