Kenneth L. DRAKE,
Defendant–Appellant,

v.

Eddie LAWRENCE, Plaintiff–Appellee.

No. 64A03–8707–CV–173.

Court of Appeals of Indiana,
Third District.

June 13, 1988.

Rehearing Denied July 27, 1988.

Donald W. Pagos, Sweeney, Dabagia, Donoghue & Thorne, Michigan City, for defendant-appellant.

John A. Hyde, Hammond, for plaintiff-appellee.

GARRARD, Presiding Judge.

Kenneth Drake appeals from a judgment in favor of Eddie Lawrence in which Drake was held civilly liable for violating Lawrence's constitutional rights under the federal Civil Rights Act. Drake raises the following issues:

1) whether the jury's verdict is supported by sufficient evidence;

2) whether Drake was immune from liability;

3) whether the trial court erred in refusing a tendered instruction;

4) whether the jury's compensatory damage award is excessive; and

5) whether the punitive damage award is contrary to law, not supported by sufficient evidence or is excessive.

We affirm.

The appeal is from a jury verdict of $3500.00 in compensatory and $35,000.00 in punitive damages[1] in a suit brought by Eddie Lawrence against Kenneth Drake under 42 U.S.C. § 1983. This statute, in relevant part, provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage ... subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

42 U.S.C. § 1983 (1982). There are two essential elements under a § 1983 claim: the conduct complained of must have been committed by a person acting under color of state law; and the conduct must deprive the complainant of rights, privileges or immunities guaranteed by the Constitution or

---

1. The trial court ordered a $25,000.00 remittitur.

the laws of the United States. *Parratt v. Taylor* (1981), 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420.

Drake first contends that there was insufficient evidence on the essential elements of Lawrence's § 1983 claim to sustain the jury's verdict. When reviewing sufficiency claims, this court neither reweighs the evidence nor judges the credibility of witnesses. We look only to the evidence and the reasonable inferences to be drawn therefrom which support the verdict. If substantial evidence of probative value exists to support the verdict, it will not be disturbed. *Abels v. Monroe County Educ. Ass'n.* (1986), Ind.App., 489 N.E.2d 533, *reh. denied* 490 N.E.2d 775. Where the verdict is a general one, as in this case, it will be affirmed on any reasonable grounds supported by the record. *Picadilly, Inc. v. Colvin* (1988), Ind., 519 N.E.2d 1217.

The evidence most favorable to the verdict in this case shows that in October of 1980, Kenneth Drake was employed as a police officer by the City of Michigan City which is located in LaPorte County. During the first few days of that month, Drake arrested Jeffrey Griffin on charges of theft. After being arrested Griffin gave a statement regarding other thefts he had committed in Michigan City. Griffin stated that he had been involved in the theft of a battery charger and a speedy air compressor which he sold to The Junk Shop located in The Pines, a small community adjacent to Michigan City but within the boundaries of Porter County.

Drake and his partner did not procure a search warrant but took Griffin to The Junk Shop and told its owner, Eddie Lawrence, that they were there to recover some stolen goods. When Lawrence stated that he did not know what they were talking about, Drake inquired whether Lawrence recognized Griffin. Although Lawrence admitted recognizing Griffin, he told Drake that he could not remember from where or why he recognized him. Drake stated that Lawrence had bought a battery charger and a speedy air compressor from Griffin which were stolen and that they wanted the items. Lawrence said he would give them the air compressor if they could identify it because he had several. Drake replied that he did not have to give Lawrence any information or identify the compressor and told Lawrence to go and get it. When Lawrence refused to do so without a description, Drake stated that he did not like "messing with people" in Lawrence's kind of work and that if Lawrence did not give them the air compressor, he would be back in twenty-four hours with a warrant for Lawrence's arrest and to close him down. Lawrence again refused to give Drake an air compressor and the officers and Griffin left. Drake later testified that he had not seen any air compressors while at The Junk Shop.

On his return to LaPorte County, Drake gave the following statement to the prosecutor's office. Based on the information received from Griffin, he and his partner went to The Junk Shop and spoke to Lawrence who admitted that he recognized Griffin and that he had purchased items from him. When he told Lawrence they were there to recover a stolen battery charger and a stolen speedy air compressor, Lawrence replied that he had sold the battery charger but still had the compressor which he would not turn over because he had not received compensation on previous occasions when he had turned stolen goods over to authorities. After Drake advised Lawrence that Lawrence did not have a choice, Lawrence became argumentative and demanded that Drake describe the air compressor and would not accept a description from Griffin. When Drake advised Lawrence that if Lawrence continued to refuse to turn over the compressor Drake would have no choice but to seek an arrest warrant, Lawrence replied that he did not care because he was not going to turn the air compressor over to Drake. After giving this statement, Drake signed a LaPorte County information form which was filled out by a deputy prosecutor and charged Lawrence with exerting unauthorized control over a silver speedy air compressor with the intent to deprive its owner of its use or value.

The following day, Drake testified at the probable cause hearing. Drake reiterated the information he had given to the deputy prosecutor and also stated "we have found numerous stolen items out there" and that they had received a lot of "smart aleck talk" from Lawrence. The judge signed the arrest warrant and set bond at $25,-000.00.[2] Later in the day, Drake went to The Pines, sought and obtained the assistance of the Porter County Sheriff's Department and went to The Junk Shop where he arrested Lawrence in front of at least one employee and one customer.

▮ The day following the arrest, Lawrence posted a property bond. He subsequently filed a motion to dismiss based upon improper venue. The motion was granted. On July 21, 1981, Lawrence filed suit against Drake and various governmental entities.[3] Drake responded to Lawrence's suit by signing a Porter County probable cause affidavit, as a Michigan City police officer, which caused Porter County authorities to arrest Lawrence for receiving stolen property. Later these charges were also dismissed.

▮ Drake first contends that there is insufficient evidence to support the jury's implicit conclusion that he acted under color of state law when he testified at the probable cause hearing which resulted in a warrant being issued for Lawrence's initial arrest. "[U]nder color of state law refers to that misuse of power possessed by virtue of state law which is made possible only because the wrongdoer is clothed with the authority of the state." 15 Am.Jur.2d Civil Rights § 18, p. 311 (1976) and cases cited therein. Acts of police officers are deemed to be under color of state law if the alleged deprivation of a right is committed in the course of fulfilling tasks assigned to them. *Id.* citing *Stern v. Massachusetts Indem. & Life Ins. Co.* (D.C.E.Pa.1973), 365 F.Supp. 433. Drake concedes that a police officer's testimony may be considered to be under the color of state law and that the issue of whether it was so given is a question for the trier of fact. (Appellant's Brief, p. 14). A police officer's testimony may be under the color of state law when, by regulation or custom, he has a duty to testify as part of his official functions. *Briscoe v. LaHue* (7th Cir. 1981), 663 F.2d 713, *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96. While we see little difficulty in determining that a police officer is engaged in the performance of his duties when he testifies at a probable cause hearing to secure a warrant for search or arrest, we would then be required to determine whether that testimony was nevertheless privileged. *Briscoe, supra.*

▮ The parties have not fully argued the separate question of privilege as it applies to probable cause hearings and we decline to address it since it is not necessary to our decision.[4] We say this because the flaw in Drake's argument is the assumption that his testimony at the probable cause hearing was the only act he committed which led to the alleged deprivation of Lawrence's rights.

Drake investigated the alleged crime and reported it to the LaPorte County prosecutor. Drake, as a police officer, had a duty

---

2. The arrest warrant cited the code section for criminal deviate conduct as the crime for which Lawrence was to be arrested.

3. The trial court dismissed the suit against these various entities by concluding that the case was one for malicious prosecution rather than false arrest and that these entities were therefore immune under IC 34–4–16.5–3(5) (1982 & Supp. 1987). While the complaint essentially does allege facts to support a malicious prosecution suit, evidence at trial supports a claim for false arrest and we have treated the case accordingly. Thus Drake's argument that the evidence failed to support the conclusion that the case against Lawrence was terminated in his favor is irrele-

vant as such a termination is not required to be shown in cases for false arrest or false imprisonment under § 1983. *Cameron v. Fogarty* (2nd Cir.1986), 806 F.2d 380 (in action for false imprisonment plaintiff need not show prior proceedings terminated in his favor but a conviction is deemed to establish probable cause and will bar any recovery.)

4. While the Seventh Circuit addressed the immunity question as to both probable cause hearings and testimony at trial in *Briscoe, supra,* the Supreme Court addressed only the privilege afforded to trial testimony.

to investigate criminal activity.[5] IC 36–8–3–10 (1982). Furthermore, Drake testified that it was customary for police officers to take their information to the prosecuting attorney who would decide if the information was sufficient to apply for a warrant. Drake's investigation and reporting of the results to the prosecuting attorney therefore constituted acts he performed in fulfilling his tasks as a police officer. As such, there was substantial evidence of probative value from which the jury could conclude that Drake was acting under color of state law.

■ Drake next contends that he did not act wrongfully, which we interpret to mean that there was insufficient evidence to support the conclusion that he misused the power he possessed by virtue of his status as a police officer. Both parties focus upon the irregularities in the information which Drake signed in support of their arguments on this issue. Lawrence argues that Drake falsely accused him of theft because the information recites the elements of that crime rather than those for receiving stolen property. In addition, Lawrence argues that Drake falsely swore that the crime occurred in LaPorte County when Drake knew it would have had to occur in Porter County. Drake counter-argues that the information clearly stated it was for "theft-possession of stolen property" and that he testified at the probable cause hearing that Griffin and his accomplice stole the items and then sold them to Lawrence. On Lawrence's second point, Drake contends that the information had LaPorte County preprinted upon it and that at the probable cause hearing he stated several times that it occurred at The Pines. He thus argues that the trial judge was not misled by the information in issuing the arrest warrant and any irregularities it may have contained did not cause Lawrence to be deprived of his liberty in violation of his rights. Regardless of the merits of these respective arguments, the focus upon them is misplaced. Even if the judge who issued the arrest warrant was not misled by the defects in the information, the jury reasonably could have concluded that Drake made false statements which caused Lawrence to be deprived of his civil rights.

The evidence most favorable to the verdict shows that Lawrence told Drake that he recognized Griffin but could not remember from where, and that Drake then stated that Griffin had sold Lawrence some stolen items and demanded the return of an air compressor which Drake did not see and of which he refused to provide a description. It also appeared that Lawrence offered to be cooperative but requested some kind of identifying information concerning the allegedly stolen compressor. From this evidence, the jury could have concluded that Drake lacked probable cause to believe Lawrence was guilty of knowingly receiving stolen goods in any county. The evidence most favorable to the verdict also shows that lacking probable cause, Drake went to the prosecutor's office and falsely stated that Lawrence, absent compensation, refused to turn over an air compressor which he admitted that he had purchased from Griffin and still possessed. It was upon Drake's statements to the prosecutor that the information was based and upon that information that the arrest warrant was issued. A police officer is required to use reasonable professional judgment in applying for a warrant. *Malley v. Briggs* (1986), 475 U.S. 335, 106 S.Ct. 1092, 1099, 89 L.Ed.2d 271. The jury in this case could have concluded that Drake failed to use reasonable judgment in applying for the arrest warrant. The jury's verdict thus is supported by sufficient evidence.

■ Although Drake contends that he was immune from liability, his argument is based upon the conclusion that the jury found in favor of Lawrence based upon Drake's testimony at the probable cause hearing. As noted, the jury could have found Drake liable based upon his actions

**5.** The fact that Drake lacked the authority to investigate criminal activity outside of Michigan City, IC 36–8–3–10 (1982), does not invalidate the conclusion he was acting under color of state law. *Wirth v. Surles* (4th Cir.1977), 562 F.2d 319.

in applying for the arrest warrant. The United States Supreme Court has held that police officers are only qualifiedly immune when they seek such warrants and that the officer is not immune where he reasonably should have known that he lacked probable cause to request the warrant. *Malley v. Briggs* (1986), 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271. This remains true regardless of whether the prosecution actually applies for the warrant and the judge approves it. *Id.* Because the jury reasonably could have concluded that Drake lacked probable cause in seeking the arrest warrant, he was not immune from suit under § 1983.

Drake next contends that the trial court erred in refusing to give the following instruction:

If you decide to consider the elements of damages, you must find proof of actual injury suffered. You may not award damages for the value of a constitutional right.

■ For the refusal of a tendered instruction to constitute reversible error the instruction must be a correct statement of the law and its substance must not have been covered by the instructions which the court gave. *City of Lake Station v. Rogers* (1986), Ind.App., 500 N.E.2d 235. Drake's argument fails for two reasons.

■ The first sentence of the instruction, if not a misstatement of the law, is at least misleading to the jury in its requirement to find proof of actual injury. Because federal law controls the issue of damages in a § 1983 action, proof of actual injury or more than nominal damages is not necessary. *See* 15 Am.Jur.2d, Civil Rights, § 16, pp. 306–307 and cases cited therein.

Secondly, while the Supreme Court held in *Memphis Comm. School Dist. v. Stachura* (1986), 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249, that it was error to instruct the jury that they might award damages based strictly upon the value or importance of the right infringed, that is not to say the court must give an instruction precluding such damages. The question is whether the jury was properly advised on damages by the instructions given on that subject.

Drake has presented no argument that they were not nor even a criticism of the instructions given at trial.

The instruction was properly refused.

■ Drake lastly contends that the compensatory and punitive damage awards are contrary to law or excessive. Drake, however, only cites Indiana cases for these contentions. As previously noted, the issue of damages in § 1983 cases is governed by federal common law. As such, Drake has waived this issue for failure to support his argument with relevant authority. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7). It should be noted, however, that we disagree with Drake's argument that the jury had to have considered the improper element of the value of a constitutional right in awarding $3,500.00 in compensatory damages. Lawrence not only was deprived of his freedom for a day, but was required to use his home and business as security for the $25,000.00 property bond. His arrest occurred in front of an employee and a customer. He undoubtedly suffered anxiety over the pending charges. He was entitled to recover for any impairment of reputation, personal humiliation, embarrassment and emotional distress. *Stachura, supra.* As for Drake's argument on the punitive damage award, it should be noted that such damages may be awarded in § 1983 suits even absent proof of actual injuries. *McCulloch v. Glasgow* (5th Cir. 1980), 620 F.2d 47. Furthermore, we cannot say the $10,000.00 award in this case was excessive when the evidence most favorable to the verdict as to Drake's conduct is considered.

Affirmed.

SHIELDS, P.J., and STATON, J., concur.