Monica L. RADCLIFF, Appellant–
Plaintiff,

v.

COUNTY OF HARRISON, State of
Indiana, Harrison County Board of
Commissioners, Edward L. Davis, Jr.,
Sheriff, County of Washington, State of
Indiana, Washington County Board of
Commissioners, James C. Watson,
Sheriff, Appellees–Defendants.

No. 31A01–9304–CV–111.

Court of Appeals of Indiana,
First District.

July 29, 1993.

Maryland L. Austin, Corydon, IN, for appellant-plaintiff.

R. Kent Westberry, Landrum & Shouse, Louisville, KY, Jay D. Allen, Allen, Allen and Allen, Salem, IN, Sandra L. Heeke,

Smith, Bartlett, Heeke & Carpenter, Jeffersonville, IN, for appellees-defendants.

ROBERTSON, Judge.

Monica L. Radcliff appeals the summary judgment entered against her in her suit against Harrison and Washington Counties, the Harrison and Washington County Commissioners, and the Harrison and Washington County Sheriffs. Radcliff alleges that the Harrison County Sheriff took her into custody on an emergency mental health detention order and then unlawfully incarcerated her in the Washington County jail. Both counties have submitted appellee's briefs collectively propounding eight (8) justifications for the trial court's entry of summary judgment. We affirm summary judgment with respect to Harrison and Washington Counties and the Harrison and Washington County Commissioners. However, we reverse summary judgment with respect to the Harrison and Washington County Sheriffs.

## FACTS

The facts in the light most favorable to the nonmovant Radcliff indicate that on October 30, 1991, Radcliff's mother caused an "Application for Emergency Detention of Person Alleged to be Mentally Ill and Dangerous and in Need of Immediate Restraint" to be filed in the Harrison County Circuit Court. In conjunction therewith, a "Physician's Statement" was filed which contained a statement by the family doctor to the effect that he believed Radcliff may be mentally ill and dangerous based upon the representations made by Radcliff's mother and sister. Based on this information, the trial court signed an "Endorsement by Judicial Officer" which authorized any police officer of Harrison County to take Radcliff into custody and transport her to the LifeSpring Mental Health Center.

That evening, Radcliff returned to her home and, upon hearing that someone from the Harrison County Sheriff's Department had been there, telephoned the Sheriff. Radcliff was informed that the Sheriff wanted to serve some papers on her and agreed to receive service of the papers that evening. Harrison County Sheriff Edward Davis and his deputy, Captain Terry Allen, arrived at Radcliff's home at approximately 7:30 p.m. to take her into custody pursuant to the court's order. The police officers called the LifeSpring Mental Health Center and were advised that no beds would be available there until the next morning. Captain Terry Allen then called the trial court judge and informed him that no bed was available at LifeSpring. According to Terry, the judge instructed the police officers to take Radcliff into custody anyway. Allen informed the judge that no bed was available at the Harrison County jail for a woman that night. The judge then instructed the officers to take Radcliff to either the Clark County jail or the Washington County jail until a bed became available at LifeSpring.

Radcliff offered to go with the Sheriff's deputy the following morning when the bed at LifeSpring was to open up. Her offer was refused and the police officers took her into custody and transported her to the Washington County jail. Radcliff was committed to the Washington County jail pursuant to an unwritten agreement between Harrison and Washington Counties whereby Washington County would jail women prisoners for Harrison County when no bed was available for a woman at the Harrison County jail. Radcliff remained in custody at the Washington County jail until approximately 12:30 p.m. the next day when she was transferred to LifeSpring by Washington County officials.

Radcliff was detained at LifeSpring for another day. There a physician examined Radcliff and called the Harrison Circuit Court to advise that he found "no probable cause to believe that [Radcliff] meets the criteria for involuntary commitment." Radcliff was then released.

Additional facts are supplied as necessary.

## DECISION

We review the trial court's entry of summary judgment using the following standard:

'The party appealing from the grant of summary judgment must persuade the appellate tribunal that the judgment erroneously determined "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind.Trial Rule 56(C). Thus, the reviewing appellate court faces the same issues that were before the trial court and follows the same process ... The trial court's determination must be "carefully scrutinized on appeal" to assure that the non-prevailing party is not improperly prevented from having his day in court.' 'In considering the motion for summary judgment, the contents of all pleadings, affidavits and testimony are liberally construed in the light most favorable to the non-moving party.' Where material facts conflict or undisputed facts lead to conflicting inferences, summary judgment is inappropriate, even if the court believes the non-moving party will not succeed at trial.

*Greathouse v. Armstrong* (1993), Ind., 616 N.E.2d 364, 365 (Citations omitted).

### I.

Whether the Counties and the County Commissioners may be held responsible for the actions of the County Sheriffs?

A county and its commissioners have no control over the actions of the county sheriff. *Carver v. Crawford* (1990), Ind.App., 564 N.E.2d 330. Therefore, county commissioners have no liability for the sheriff's actions. *Id.* A county and its commissioners cannot be held liable for a claim of false imprisonment made against the county sheriff. *Delk v. Board of Commissioners of Delaware County* (1987), Ind.App., 503 N.E.2d 436. Therefore, summary judgment was appropriately entered in favor of the Counties and its Commissioners.

### II.

Whether Radcliff was unlawfully detained?

The sheriffs assert that Radcliff's incarceration was lawful because it was pursuant to the trial court's order and instructions and thus, summary judgment was appropriately entered. False imprisonment consists of an unlawful restraint on one's freedom of movement against his will. *Id.* A town marshall is liable for false imprisonment when he incarcerates a person in the county jail without a warrant or judicial order. *Hall v. State ex rel. Freeman* (1944), 114 Ind.App. 328, 52 N.E.2d 370.

It is well settled that a court of record speaks only through its order book entries. *Indiana Stream Pollution Control Board v. Tippecanoe Sanitary Landfill, Inc.* (1987), Ind.App., 511 N.E.2d 473, *trans. denied.* Even a silent order book controls statements made from the bench regarding matters that ought to be reflected by an order book entry. *Id.* Therefore, an alleged conversation with the trial judge will not serve as a substitute for an order book entry. *Id.* Litigants are charged with notice of official court records and that which may be properly entered into the court records. *Blum's Lumber & Crating, Inc. v. James* (1972), 259 Ind. 220, 285 N.E.2d 822. "They are not, however, charged with notice of or to be prejudiced by the uncommunicated thoughts of the judge or by private communications that may have passed between him and others." *Id.* at 222, 285 N.E.2d at 824.

In the present case, the only court order entered into the court's order book authorized the police officers to take Radcliff into custody and transport her, not to jail, but to the LifeSpring Mental Health Center. As the trial court speaks only through its order book, any subsequent communications the trial judge may have had with the sheriff or his deputy are of no legal consequence. Therefore, Radcliff's incarceration in the county jail without a valid warrant or judicial order was unlawful. *See Hall v. State ex rel. Freeman* (1944), 114 Ind.App. 328, 52 N.E.2d 370.

### III.

Whether the sheriffs are entitled to judicial immunity?

The sheriffs assert that they were merely following the directions of the trial

court judge and are therefore entitled to judicial immunity, citing *Jones v. Bowman* (N.D.Ind.1988), 694 F.Supp. 538 and *Zuranski v. Anderson* (N.D.Ind.1984), 582 F.Supp. 101. Both *Jones* and *Zuranski* stand for the proposition that a sheriff is entitled to judicial immunity for the unlawful incarceration of a person when the sheriff is acting pursuant to a court order. However, both *Jones* and *Zuranski* are distinguishable from the present case because they both involved valid court orders entered on the courts' order books.

As noted above, the trial court speaks only through its order book. The sheriffs were not authorized by a valid court order to incarcerate Radcliff in the county jail and are therefore not entitled to judicial immunity.

### IV.

Whether the sheriffs are entitled to immunity under Ind.Code 16–14–9.1–12?

 The sheriffs claim immunity under I.C. 16–14–9.1–12 which reads:

(a) Any person who, without malice, bad faith or negligence *and according to this chapter:*

(1) participates in proceedings for the detention or commitment of another person; or

(2) assists in the detention, care, and treatment of another person alleged or adjudged to be mentally ill; is immune from any civil or criminal liability which might otherwise be imposed as a result thereof.

(b) This immunity does not permit any person to physically abuse a patient nor deprive a patient of any personal or civil rights *except according to the provisions of this chapter.*

(Emphasis added).

Radcliff was taken into custody pursuant to an emergency detention order authorized by this chapter, specifically I.C. 16–14–9.1–7. This statute provides that, under prescribed circumstances, a person may be detained and transported to a hospital or community mental health center. Indiana Code 16–14–9.1–7(a) provides that a written application must be made to the hospital or community mental health center before applying to the judge for an order to take the person sought to be detained into custody. In all probability, had the statute been adhered to and had application to LifeSpring been made before obtaining the "Endorsement by Judicial Officer," Radcliff's unlawful incarceration would not have occurred. Radcliff's mother and the others involved in initiating the emergency detention proceedings would have been informed that Radcliff could not stay at LifeSpring and would have made other, hopefully legal, arrangements.

Moreover, I.C. 16–14–9.1–16, in effect at the time of Radcliff's incarceration but repealed in February of 1992, applied to emergency detention proceedings. I.C. 16–14–9.1–3. Indiana Code 16–14–9.1–16 read in pertinent part as follows:

Care Pending Admission to an Appropriate Facility.

(a) Whenever any person has been committed to an appropriate facility, the court shall consult with the superintendent of the appropriate facility or the attending physician concerning the method of caring for the person pending admission to the facility....

(b) The court may order the temporary placement [of] any person so committed in the least restrictive suitable facility pending admission to the appropriate facility.

(c) *No person so committed may be confined in the county jail unless:*

(1) he is found to be dangerous and violent;

(2) there is no other suitable facility available pending admission to an appropriate facility; *and*

(3) *the court so orders.*

(Emphasis added.)

Again, no valid court order committing Radcliff to the county jail was ever entered in the trial court's order book. Therefore, Radcliff was not properly committed to jail according to the provisions of chapter 9.1.

Therefore, no immunity is available to the sheriffs under I.C. 16–14–9.1–12.

### V.

Whether immunity is available to the sheriffs under the Indiana Tort Claims Act?

### A.

The sheriffs first seek refuge under I.C. 34–4–16.5–3(5) which reads as follows:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

\* \* \* \* \* \*

(5) the initiation of a judicial or an administrative proceeding;

The sheriffs assert this section of the Indiana Tort Claims Act applies because Radcliff's loss resulted from the initiation of a judicial proceeding. The sheriffs concede, however, that no governmental entity or employee initiated the legal proceedings in question and that Radcliff's mother, primarily, was responsible for initiating the emergency detention proceedings that resulted in Radcliff's incarceration.

 We have researched and examined every case in which I.C. 34–4–16.5–3(5) has been cited. Although no case has spoken to the precise issue at hand, we are satisfied that the section provides immunity only in situations where the judicial or administrative proceeding is *initiated by the governmental entity or employee* and does not provide blanket immunity to governmental entities and employees for all losses resulting from judicial or administrative proceedings regardless of who initiated the proceeding in question. *Edwards v. Vermillion County Hospital* (1991), Ind. App., 579 N.E.2d 1347; *Hupp v. Hill* (1991), Ind.App., 576 N.E.2d 1320, *trans. denied; Drake v. Lawrence* (1988), Ind. App., 524 N.E.2d 337, *trans. denied; Riggin v. Board of Trustees of Ball State University* (1986), Ind.App., 489 N.E.2d 616, *trans. denied; Board of Commissioners of Hendricks County v. King* (1985), Ind.App., 481 N.E.2d 1327; *Poole v. Clase* (1983), Ind.App., 455 N.E.2d 953, *vacated on other grounds,* 476 N.E.2d 828; *Jacobs v. City of Columbus* (1983), Ind.App., 454 N.E.2d 1253; *State of Indiana, Department of Mental Health v. Allen* (1981), Ind.App., 427 N.E.2d 2; *State of Indiana, Department of Natural Resources v. Taylor* (1981), Ind.App., 419 N.E.2d 819; *Hedges v. Rawley* (1981), Ind.App., 419 N.E.2d 224; *Livingston v. Consolidated City of Indianapolis* (1979), Ind.App., 398 N.E.2d 1302; *Norris by Norris v. Board of Education of Greenwood Community School Corporation* (S.D.Ind.1992), 797 F.Supp. 1452. In fact, the United States District Court for the Northern District of Indiana held in *Adams v. State* (D.C.Ind.1985), 622 F.Supp. 1478, *vacated on other grounds,* (7th Cir.1986), 795 F.2d 27, that I.C. 34–4–16.5–3(5) would not provide the Indiana Department of Revenue with immunity for the actions of an investigator for the Motor Fuel Tax Division when the administrative proceedings in question were not instituted by the defendants. *Id.* 622 F.Supp. at 1487.

The emergency detention proceedings which resulted in Radcliff's unlawful incarceration were not initiated by the governmental entities or employees involved. Therefore, immunity is not available to the sheriffs under I.C. 34–4–16.5–3(5).

### B.

 Next, the sheriffs rely on I.C. 34–4–16.5–3(6) which reads:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

\* \* \* \* \* \*

(6) the performance of a discretionary function;

Whether a particular act is discretionary and therefore immune is a question of law for determination by the courts. *Greathouse,* 616 N.E.2d 364. In determining when governmental conduct falls within the class entitled to immunity under I.C. 34–4–16.5–3(6), the court on review em-

operational test. *Id.* The *Greathouse* court stated the planning-operational test as follows:

> Through the planning-operational test, we distinguish between decisions involving the formulation of basic policy, entitled to immunity, and decisions regarding only the execution or implementation of that policy, not entitled to immunity. The critical inquiry associated with the test is 'not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations.' 'The governmental entity seeking to establish immunity bears the burden of proving that the challenged act or omission was a policy decision made by the conscious balancing of risks and benefits.'
>
> \* \* \* \* \* \*
>
> When the conduct of the government employee in implementing department regulations requires only performance of predetermined procedures, and not the formulation of policy, such conduct is not immunized from judicial review as a 'discretionary function.'
>
> \* \* \* \* \* \*
>
> '[A] simple decision whether to dispatch an officer to the scene of a crime or to investigate a crime, without more, does not invoke a basic policy decision by a high level executive which would render the decision maker immune from suit. Rather, the decision is more properly characterized as operational, for it involves a type of discretion exercised at an everyday operational level.'
>
> \* \* \* \* \* \*
>
> If policy formulation included every act which involves any element of choice, judgment or ability to make responsible decisions, every act would then fall within the discretionary function exception. There is no such broad legislative purpose. The immunity provided the performance of discretionary functions in I.C. § 34-4-16.5-3(6) does not shield the Sheriff's Department from liability for conduct associated with implementation of its established policies.

*Id.* at 366–368 (Citations omitted.) The *Greathouse* court held that the implementation of the Sheriff department's pre-determined procedures in handling a loose cattle report was operational in nature and not immunized as a discretionary function. *Id.* at 368.

██ In the present case, the Harrison County Sheriff and his deputy were dispatched to execute the "Endorsement by Judicial Officer" which directed them to take Radcliff into custody and transport her to LifeSpring. After learning that no bed was available at LifeSpring, the Sheriff and his deputy were required to exercise some professional discretion in determining what to do next. However, their ultimate decision to take Radcliff to the Washington County jail was not the equivalent of the formulation of basic policy. Rather, their decision is more properly characterized as operational, for it involved the type of discretion exercised at an everyday operational level.

██ Similarly, Radcliff was incarcerated in the Washington County jail pursuant to an unwritten agreement between Washington and Harrison Counties whereby Washington County would jail women prisoners for Harrison County when no bed for a woman was available in the Harrison County jail. No immunity is provided either sheriff under I.C. 34-4-16.5-3(6) for the implementation of this established policy. *Greathouse*, at 368.

### C.

██ The Harrison County sheriff seeks refuge under I.C. 34-4-16.5-3(8) which reads:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:
>
> \* \* \* \* \* \*
>
> (8) an act or omission performed in good faith and without malice under the apparent authority of a statute which is invalid, if the employee would not have been liable had the statute been valid;

No invalid statute is involved in this case. Therefore, subsection 8 provides no immunity here.

### D.

██ Finally, the Harrison County sheriff seeks refuge under I.C. 34–4–16.5–3(9) which reads:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:
>
> \* \* \* \* \* \* .
>
> (9) the act or omission of someone other than the governmental entity employee;

The Harrison County sheriff asserts that subsection 9 provides immunity because the emergency detention proceeding was initiated by Radcliff's mother and the family doctor and not by the sheriff or his deputy.

The "Endorsement by Judicial Officer" for which Radcliff's mother was responsible provided that Radcliff was to be taken to LifeSpring, not jail. Radcliff's mother was not involved in the decision to incarcerate Radcliff in jail overnight, the basis of Radcliff's claim in this case. Therefore, no immunity is available to the sheriffs under subsection 9.

### CONCLUSION

We affirm the summary judgment in favor of Harrison and Washington Counties and the Harrison and Washington County Commissioners. However, we reverse the summary judgment entered in favor of the Harrison and Washington County Sheriffs.

NAJAM and RUCKER, JJ., concur.