Monica L. RADCLIFF, Appellant,

v.

COUNTY OF HARRISON, State of Indiana, Harrison County Board of Commissioners, Edward L. Davis, Jr., Sheriff, County of Washington, State of Indiana, Washington County Board of Commissioners, James C. Watson, Sheriff, Appellees.

No. 31S01–9402–CV–110.

Supreme Court of Indiana.

Feb. 2, 1994.

Maryland L. Austin, Corydon, for appellant.

R. Kent Westberry, Dave Whalin, Landrum & Shouse, Louisville, KY, for appellee James C. Watson, Sheriff of Washington County.

Jay D. Allen, Jack L. Riddle, Allen, Allen and Allen, Salem, for appellees County of Washington, State of Indiana, Edward L. Davis, and Washington County Bd. of Com'rs.

Sandra L. Heeke, Smith, Bartlett, Heeke & Carpenter, Jeffersonville, for appellee Edward L. Davis, Jr., Sheriff.

GIVAN, Justice.

In an opinion reported at 618 N.E.2d 1325, the Court of Appeals affirmed in part and reversed in part a judgment of the Harrison Circuit Court. We grant transfer and affirm the Harrison Circuit Court in its entirety.

The facts are: Appellant Radcliff's mother filed an "Application for Emergency Detention of Person Alleged to be Mentally Ill and Dangerous and in Need of Immediate Restraint" in the Harrison Circuit Court. Accompanying the application was a physician's statement that, based upon information received from Radcliff's mother and sister, he was of the opinion that she was mentally ill and dangerous.

Based upon this information, the trial court entered an order directed to the Harrison County Sheriff to take Radcliff into custody and transport her to the LifeSpring Mental Health Center. When the Sheriff first went to Radcliff's home to carry out the order, she was not present. Later, when she returned home, she was informed that the Sheriff was looking for her. She called the Sheriff's office and agreed to accept service of the papers.

Sheriff Davis and his deputy, Captain Terry Allen, arrived at Radcliff's home at approximately 7:30 p.m. The police officers called the LifeSpring Mental Health Center and were advised that no beds would be available until the next morning. Captain Allen thereupon called the trial judge and informed him that no bed was available at LifeSpring. The judge then instructed the police officers to take Radcliff into custody anyway. Allen further informed the judge that there was no bed available in the Harrison County Jail for a woman that night. The judge then instructed the officers to take Radcliff to either the Clark County Jail or the Washington County Jail until a bed be-

came available at LifeSpring. Radcliff offered to go with the sheriffs the next morning when a bed became available at LifeSpring. However, the officers declined that offer, took her into custody, and transported her to the Washington County Jail.

At approximately 12:30 p.m. the following day, a bed became available and Radcliff was transported to LifeSpring. The day after that, a physician at the hospital examined Radcliff and advised the Harrison Circuit Court that he found "no probable cause to believe [Radcliff] meets the criteria for involuntary commitment." Radcliff then was released.

The fact that Radcliff later was found to be sane and released from the hospital does not gainsay the actions of the Harrison Circuit Court or the police officers involved in this case. At the time the Harrison Circuit Court was taking action, it had before it the statements of Radcliff's mother and sister that in their opinion she was mentally ill and dangerous. Accompanying their statement was also a statement by a physician, based upon their representation, that in his opinion Radcliff was mentally ill and dangerous. It was proper for the Harrison Circuit Court, faced with this information, to issue a commitment to a mental hospital for further evaluation of Radcliff. It is obvious that to do otherwise would have the potential of endangering the well-being of Radcliff and members of her family.

The Court of Appeals in its opinion correctly holds that the county commissioners of neither county had control over the actions of the sheriff and neither the county nor the commissioners thereof can be held liable for a claim of false imprisonment made against the county sheriff, citing *Delk v. Bd. of Com'rs of Delaware County* (1987), Ind.App., 503 N.E.2d 436.

We disagree with the Court of Appeals' reversal of the Harrison Circuit Court's granting of summary judgment in favor of the sheriffs. The Harrison County Sheriff was faced with the dilemma of learning at approximately 7:30 p.m. that no bed was available at the facility to which he was ordered to deliver Radcliff. At that time, he was free to use his best judgment as to how to carry out the court order but at the same time protect Radcliff and any person with whom she might come in contact.

It was logical for him to contact the trial judge and seek his opinion in the matter. It also was proper for the trial judge to advise the sheriff to seek a solution which would retain custody of Radcliff. It should be obvious to all that the judge was not in a position to make an order book entry at 7:30 p.m.

The sheriff was entitled to treat the judge's advice as to how to carry out the previously issued order as a further order in the matter. It certainly was not the duty of the sheriff to see to it that the judge made a proper order book entry concerning the matter at his first opportunity. There is no evidence in this record that Radcliff was treated in any way other than a kind and considerate fashion. The sheriff's action was obviously in good faith and carried out without negligence. The trial court had issued a written order to the sheriff which recited that Radcliff was mentally ill and dangerous.

We hold that under the circumstances, the sheriffs involved were entitled to immunity under Ind.Code § 16–14–9.1–12 which read at that time:

(a) Any person who, without malice, bad faith or negligence and according to this chapter:

(1) participates in proceedings for the detention or commitment of another person; or

(2) assists in the detention, care, and treatment of another person alleged or adjudged to be mentally ill; is immune from any civil or criminal liability which might otherwise be imposed as a result thereof.

(b) This immunity does not permit any person to physically abuse a patient nor deprive a patient of any personal or civil rights except according to the provisions of this chapter. (This statute was repealed by Public Law 2–1992 § 897, effective February 14, 1992. For present law, *see* Ind. Code § 12–24–4–4.)

The actions of the sheriffs of both counties were entirely reasonable under the circumstances.

We grant transfer and affirm the trial court.

SHEPARD, C.J. and DICKSON, J., concur.

DeBRULER, J., dissents with separate opinion.

SULLIVAN, J., dissents.

DeBRULER, Justice, dissenting.

The Court of Appeals affirmed the summary judgment with respect to the counties and the county commissioners, but reversed the summary judgment in favor of the County Sheriffs. I agree with that opinion.

First, the County Sheriffs are not entitled to immunity under the mental health statute, I.C. § 16–14–9.1–12. This statute is written to facilitate the delivery of healthcare to those in need of it, by encouraging private persons who are witnesses to such need to come forward and participate in necessary proceedings, and by lifting the restraint of fear of groundless lawsuits from those who are within the healthcare industry. It does not grant immunity to sheriffs, judges, and other trained public officials who are charged with the duty to act in furtherance of the process and who are unlikely to be restrained in the fulfillment of that duty by groundless lawsuits.

Second, common law judicial immunity should not be stretched to cover these particular circumstances. I would restrict judicial immunity for peace officers to occasions when they are in manner, means, and time, executing express written orders of a judge, or when carrying out direct oral orders of a judge in the environs of the court itself.

Third, as a matter of common law, I would recognize in these circumstances, on behalf of law enforcement officials, a new defense of good faith or one of qualified immunity.